STATE OF NORTH CAROLINA, Plaintiff v. NOEL ANGEL VILLATORO, Defendant

No. COA07-1458

(Filed 7 October 2008)

**Criminal Law— guilty plea—request to withdraw—fair and just reasons not shown**

> The trial court did not err by denying defendant's motion to withdraw his guilty plea to two counts of first-degree kidnapping where he did not assert legal innocence, the State's proffer of evidence was strong, the time between the plea and the request to withdraw was lengthy, defendant was represented by competent counsel, and misunderstanding, haste, confusion, and coercion were not present.

Appeal by defendant from order entered on or about 26 May 2006 by Judge J. Gentry Caudill in Superior Court, Mecklenburg County. Heard in the Court of Appeals 19 August 2008.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General LaToya B. Powell, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from the trial court's denial of his motion to withdraw his guilty plea. The dispositive issue before this Court is "whether [defendant] showed fair and just reasons for granting his presentence motion to withdraw his pleas of guilty to two counts of first degree kidnapping[.]" For the following reasons, we affirm the trial court's denial of his motion.

## I. Background

On 25 April 2005, pursuant to a plea agreement defendant stipulated to facts summarized by the State upon entry of the plea as follows:

> [O]n April 16th of 2003, Charlotte-Mecklenburg Police responded to a call about some witnesses finding two dead bodies in a wooded area off Old Statesville Road here in Mecklenburg County. . . . When the police got there they also found a 1984 blue

STATE v. VILLATORO

[193 N.C. App. 65 (2008)]

Cadillac Fleetwood automobile. Those bodies were later identified as those of the two kidnapping victims and also murder victims, Martin Vargas Vargas and Guillermo Soto. They had been shotgunned to death. It is believed, Your Honor, they were killed on or about April the 6th of 2003 . . . .

. . . .

Mr. Villatoro was interviewed on May the 27th, 2003 and gave a statement to the police. He told police that—I believe he indicated on Sunday the 6th—I believe he indicated generally and other evidence would show that it was on or about April the 6th that he had been in a MS13 meeting with other members of MS13 . . . .

That he left that meeting with an Ignacio Rodriguez and Wilfredo Allas in a truck that a Jose Rivera and his brother, Augustine Rivera, were following in a car. Apparently a man named Elton Rodriguez was also present. They ended up at a gas station here in the Charlotte area where they saw these two Hispanic males, Mr. Martin Vargas Vargas and Guillermo Soto. Apparently Ignacio Rodriguez approached the two men and began talking to them. Ultimately the men were placed inside Mr. Vargas' blue 1984 Fleetwood Cadillac automobile. . . . Mr. Villatoro told police that Ignacio Rodriguez, Wilfredo Allas, and Elton Rodriguez got into the victims' Cadillac with the two victims. Mr. Villatoro said he did not know if anyone had a weapon at that time.

. . . .

They ultimately went up I-85, got off of I-85, ended up in the wooded area . . . and according to Mr. Villatoro, Augustine Rivera told the men to get out of the car, that is, Mr. Vargas Vargas and Mr. Soto, and they were taken into the woods out of sight of the road; that Augustine Rivera Rivera told them to take off their clothes and they were found only partially clothed. . . . Mr. Villatoro realized Elton Rodriguez had a shotgun. At that time Elton Rodriguez shot both men to death.

At that point they left the wooded area. Mr. Villatoro said that he, Jose Rivera and Ignacio Rodriguez ran . . . . At some point. . . . they all met back up and apparently at that point Augustine Rivera told the group that—that he had, in fact, had gone back and shot the victims twice.

On 2 June 2003, Richard E. Beam ("Mr. Beam") was appointed by the court to represent defendant. On or about 9 June 2003, the Mecklenburg County Grand Jury indicted defendant on two counts of first degree murder. On or about 3 November 2003, a grand jury indicted defendant on two counts of robbery with a dangerous weapon and two counts of first degree kidnapping, and on 3 December 2003, Mr. Beam was appointed as counsel for defendant on all of these charges also.

On or about 25 April 2005, defendant and the State reached a plea agreement. Defendant agreed to plead guilty to two counts of first degree kidnapping, to cooperate fully with State and Federal authorities, and to testify truthfully in regards to prosecution of the victims' murders. The State agreed to dismiss the two charges of first degree murder and two charges of robbery with a dangerous weapon.

On or about 13 August 2005, defendant sent correspondence to Special Superior Court Judge Albert Diaz requesting that the court remove his court-appointed attorney, Mr. Beam, and assign him a new attorney. Defendant alleged that Mr. Beam coerced him into his guilty plea and that he had ineffective legal representation. Judge Diaz treated defendant's correspondence as a motion for appropriate relief and scheduled a hearing for 15 September 2005. On or about 25 October 2005, the trial court appointed Grady Jessup ("Mr. Jessup") as defendant's new counsel. On 25 May 2006, the hearing on defendant's motion to withdraw his guilty plea began, and on or about 26 May 2006, the court denied defendant's motion to withdraw his guilty plea. Defendant appeals the denial of his motion. Thereafter, on 19 July 2007, defendant was sentenced to 68 to 91 months imprisonment for the two counts of first degree kidnapping for which he pled guilty. Defendant also appeals the judgment upon which his sentence was entered. On appeal, defendant's sole argument is that he "showed fair and just reasons for granting his presentence motion to withdraw his pleas of guilty to two counts of first degree kidnapping." For the following reasons, we affirm.

## II.  Withdrawal of Guilty Plea

Defendant argues that he has shown fair and just reasons for granting his motion to withdraw his guilty plea.

### A.  Standard of Review

In reviewing a trial court's denial of a defendant's motion to withdraw a guilty plea made before sentencing, the appellate

court does not apply an abuse of discretion standard, but instead makes an independent review of the record. There is no absolute right to withdraw a plea of guilty, however, a criminal defendant seeking to withdraw such a plea before sentencing is generally accorded that right if he can show any fair and just reason. The defendant has the burden of showing his motion to withdraw his guilty plea is supported by some fair and just reason. Our Supreme Court has set out the following factors for consideration of plea withdrawals:

[1] whether the defendant has asserted legal innocence, [2] the strength of the State's proffer of evidence, [3] the length of time between entry of the guilty plea and the desire to change it, [4] and whether the accused has had competent counsel at all relevant times. [5] Misunderstanding of the consequences of a guilty plea, [6] hasty entry, [7] confusion, and [8] coercion are also factors for consideration.

*State v. Robinson*, 177 N.C. App. 225, 229, 628 S.E.2d 252, 254-55 (2006) (citations and quotation marks omitted).

"After a defendant has come forward with a fair and just reason in support of his motion to withdraw, the State may refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea." *State v. Meyer*, 330 N.C. 738, 743, 412 S.E.2d 339, 342 (1992) (citation and quotation marks omitted). "[T]he State need not even address . . . [concrete prejudice] until the defendant has asserted a fair and just reason why he should be permitted to withdraw his guilty pleas." *Id.* at 744, 412 S.E.2d at 343 (citation omitted).

B. Factors in Determining Whether Defendant Has Shown Some Fair and Just Reason for Withdrawing His Guilty Plea

We must now consider the factors enumerated in *Robinson* to determine whether defendant has shown "some fair and just reason" to withdraw his guilty plea. *Robinson* at 229, 628 S.E.2d at 255.

1. Assertion of Legal Innocence

Defendant argues his "motion was based on his assertion of legal innocence. It complained of pressure from his first counsel to have him declare that he was guilty when he did not feel he was guilty." However, in *State v. Graham*, this Court determined that the "defendant made no concrete assertion of innocence, stating only that he

'always felt that he was not guilty.' " *State v. Graham*, 122 N.C. App. 635, 637, 471 S.E.2d 100, 102 (1996) (ellipses omitted).

Defendant's correspondence to Judge Diaz, which the court treated as a motion for appropriate relief, was stated as being in regards to "INEFFECTIVE LEGAL REPRESENTATION[.]" (Emphasis in original.) The correspondence set forth the reasons defendant believed he had received ineffective assistance of counsel and should receive new representation. Defendant did not address his guilt or innocence except in the last sentence, where defendant wrote that his attorney was "INAPPROPRIATELY PRESSURING ME TO ACCEPT THE GUILTY PLEA, WHEN I REALLY DID NOT FEEL I WAS GUILTY." (Emphasis in original.) It is clear that defendant's motion to withdraw his guilty plea was based upon coercion and ineffective assistance of counsel, not an assertion of legal innocence. Defendant's one sentence that he "REALLY DID NOT FEEL [HE] WAS GUILTY" is not an assertion of legal innocence. *See Graham* at 637, 471 S.E.2d at 102.

2. Strength of the State's Proffer of Evidence

Defendant claims that the State's evidence against him was weak, citing *State v. Hargett*, 255 N.C. 412, 121 S.E.2d 589 (1961) and *State v. Ham*, 238 N.C. 94, 76 S.E.2d 346 (1953). However, defendant's reliance on these cases is misplaced. Both *Hargett* and *Ham* involve criminal liability as an aider and abettor to homicide. *See State v. Hargett*, 255 N.C. 412, 121 S.E.2d 589 (1961); *State v. Ham*, 238 N.C. 94, 76 S.E.2d 346 (1953). However, here defendant pled guilty to two counts of first degree kidnapping as the State had dismissed the two murder charges against defendant as part of the plea arrangement. Whether the State's proffer of evidence was strong as to defendant's aiding and abetting in two murders is not the question before us; the question instead is whether the State's evidence was strong as to two counts of first degree kidnapping.

N.C. Gen. Stat. § 14-39 reads in pertinent part,

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . . .

(2) Facilitating the commission of any felony . . . ;

(3)  Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person . . . ;

. . . .

(b) If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured . . . the offense is kidnapping in the first degree . . . .

The State's evidence included defendant's personal statement made to police that

on or about April the 6th that he had been in a MS13 meeting with other members of MS13 . . . .

That he left that meeting with an Ignacio Rodriguez and Wilfredo Allas in a truck that a Jose Rivera and his brother, Augustine Rivera, were following in a car. . . . They ended up at a gas station here in the Charlotte area where they saw these two Hispanic males, Mr. Martin Vargas Vargas and Guillermo Soto. . . . Ultimately the men were placed inside Mr. Vargas' blue 1984 Fleetwood Cadillac automobile. . . . Mr. Villatoro told police that Ignacio Rodriguez, Wilfredo Allas, and Elton Rodriguez got into the victims' Cadillac with the two victims.

. . . .

They ultimately went up I-85, got off of I-85, ended up in the wooded area . . . and according to Mr. Villatoro, Augustine Rivera told the men to get out of the car, that is, Mr. Vargas Vargas and Mr. Soto, and they were taken into the woods out of sight of the road; that Augustine Rivera Rivera told them to take off their clothes and they were found only partially clothed. . . . Mr. Villatoro realized Elton Rodriguez had a shotgun. At that time Elton Rodriguez shot both men to death.

Based on this proffer, we conclude there was strong evidence defendant committed two counts of first degree kidnapping.

3. Length of Time Between Entry of the Guilty Plea and the Desire to Change It

On or about 25 April 2005, defendant pled guilty to two counts of first degree kidnapping. Approximately three and one-half months later, on 13 August 2005, defendant sent correspondence to Judge Diaz, which contained no direct request to withdraw defendant's guilty plea and was initially "treated as a Motion for Appropriate

Relief." Once a hearing was held, defendant's "motion" was treated as a request to withdraw his guilty plea.

Defendant, relying solely on *State v. Deal*, 99 N.C. App. 456, 393 S.E.2d 317 (1990), contends that his nearly four month delay can be excused by the fact that he "was only seventeen, had no criminal record, came from a foreign culture, had little command of English and had limited means by which he could communicate with his first counsel while he remained confined in the county jail."

Prior cases have "placed heavy reliance on the length of time between a defendant's entry of the guilty plea and motion to withdraw the plea." *Robinson* at 229, 628 S.E.2d at 255 (citation omitted). In *Robinson*, this Court affirmed the denial of defendant's motion to withdraw his guilty plea when it was made approximately three and one-half months after its entry. *Id.* at 229-32, 628 S.E.2d at 255-57; *see also State v. Graham*, 122 N.C. App. 635, 637-38, 471 S.E.2d 100, 101-02 (1996) (Denial of defendant's motion to withdraw guilty plea was affirmed when it was made five weeks after entry.).

Furthermore, *Deal*, the case upon which defendant relies, involved a defendant who had "been diagnosed as learning disabled and . . . read[] and spell[ed] at a second grade level." *State v. Deal*, 99 N.C. App. 456, 458, 393 S.E.2d 317, 318 (1990). This Court, in *Deal*, determined

> that in light of defendant's low intellectual abilities, there is suffi-
> cient credible evidence that he was laboring under a basic *mis-
> understanding of the guilty plea process*. We therefore find that
> his plea of guilty was not the result of *an informed choice*.
> Although he did not attempt to revoke his plea for over four
> months, this appears to have resulted from his *erroneous ex-
> pectations and lack of communication with his attorney. Id.* at
> 464, 393 S.E.2d at 321 (emphasis added).

In the present case there is no evidence that defendant possessed low intellect. Furthermore, there is strong evidence that defendant had a good grasp on the "guilty plea process[,]" made "an informed choice[,]" and did not have "erroneous expectations[,] *see id.*, evidenced by his engagement in an approximately four month plea bargain process with the State. Defendant informed his original counsel, Mr. Beam, that he wanted a closed plea of not more than eight years imprisonment. Defendant did *not accept the State's first or second plea offers as they did not offer what he requested. As part of defend-

ant's 25 April 2005 plea agreement, the State agreed that defendant would not serve more than seventy-nine months, fitting the requirements that defendant originally informed his counsel he wanted.

Similarly, there is no evidence of a "lack of communication" between defendant and his attorney, *see id.*, that could have prevented defendant from understanding the proceedings or choosing to plead guilty. Defendant's counsel, Mr. Beam, was assisted by an interpreter when he discussed with defendant his statement to police, his co-defendant's statements, discovery, the evidence, and the plea offers from the State. Furthermore, an interpreter was provided during his 25 April 2005 plea hearing. We conclude that defendant's case is not apposite to *Deal* in that defendant's delay in filing for withdrawal of his guilty plea had nothing to do with low intellectual abilities, a misunderstanding of the guilty plea process, or lack of communication with his attorney. See Deal at 464, 393 S.E.2d at 321.

4. Whether the Accused Has Had Competent Counsel at All Relevant Times

Defendant argues that Mr. Beam gave him advice that was "legally incompetent." The portion of testimony that defendant contends is evidence of Mr. Beam's incompetent representation occurred during defendant's motion to withdraw hearing. Mr. Beam, in reference to defendant aiding or assisting Elton Rodriguez or Augustine Rivera, said there was a "jury instruction that says it's presumed that when you are in that situation, that if you are a member of the group then you are involved."

The law regarding aiding or abetting is that "[a] person aids when, being present at the time and place, he does some act to render aid to the actual perpetrator of the crime though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or either commands, advises, instigates or encourages another to commit a crime." *State v. Holland*, 234 N.C. 354, 358, 67 S.E.2d 272, 274-75 (1951) (citation and quotation marks omitted).

> Mere presence, even with the intention of assisting in the commission of a crime cannot be said to have incited, encouraged or aided the perpetrator thereof, unless the intention to assist was in some way communicated to [the perpetrator]; but if one does something that will incite, encourage, or assist the actual perpetration of a crime, this is sufficient to constitute aiding and abetting.

*State v. Hoffman,* 199 N.C. 328, 333, 154 S.E. 314, 316 (1930) (citations omitted).

Mr. Beam, when speaking of "presumptions," may have been referencing case law that has stated "when the bystander is a friend of the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement," and this can constitute aiding and abetting. *State v. Williams,* 225 N.C. 182, 184, 33 S.E.2d 880, 881 (1945) (citations and quotation marks omitted). Mr. Beam stated regarding a conversation about defendant's gang activity:

A I explained to [defendant] that although he was merely present, that the group he was involved in killed two people.

Q You said that he claimed that he is a member of that group, and that the jury could draw inferences from that; that they might be concerned that they might be up to no good and things [of] that nature.

A Correct.

Further testimony by Mr. Beam showed he was specifically concerned with inferences that could be drawn from defendant's continued involvement with MS-13, while still claiming not to know what was going on the day of the murders:

Q I think you mentioned this earlier, perhaps, I believe in response to one of Mr. Jessup's questions.

Mr. Villatoro, in your conversations with him as his attorney, had told you, in fact, that he was present when Ignacio Rodriguez sold or he tried to sell the shotgun.

A I believe he did. Yes, sir.

Q Based upon your experience as an attorney, Mr. Beam, being on the approved list by the Capital Defenders Office and being qualified to represent defendants charged with first-degree murder, did that concern you—his being identified doing that and his admissions of doing that?

A Yes, sir.

Q Why?

A His statement to police was that he was present when the killings happened but he didn't—he didn't know they were going to occur. He didn't have anything to do with the evidence about continuing to be seen with the individuals, including when the firearms were disposed of.

Q It was very troubling as to Mr. Villatoro's role in this case as it related to the charges against him; correct?

A Yes. When one is present when something like this happens and doesn't know anything is going to occur, it's somewhat counter-intuitive to be present in that vein and be present when they are selling the shotgun. The jury would have problems with that. That is what we discussed.

This testimony shows that Mr. Beam's discussions with defendant addressed the inferences that a jury could make from the evidence about defendant's gang involvement and about his knowledge of what may happen when the other gang members took the victims into the woods. Furthermore, though Mr. Beam used the word "presumed" during his testimony, there is no evidence to show that he instructed defendant that the burden of proof was on defendant to prove that he was not aiding and abetting these crimes. To the contrary, Mr. Beam advised defendant that the State had the burden of proving beyond a reasonable doubt that defendant was guilty of these crimes.

After a thorough review of the record, we also find other evidence of Mr. Beam's competence as defendant's counsel: Mr. Beam stated that he spent "a fair amount of time going over what the various slants were that one could put on the elements of [defendant's] statement, to meet those elements or not meet those elements[;]" Mr. Beam went over defendant's statement to police in great detail with defendant at least fourteen times with an interpreter; Mr. Beam talked to defendant for approximately three hours with an interpreter reviewing the plea agreement which defendant eventually accepted; Mr. Beam spent a long time explaining the possible punishment if defendant was found guilty of the charged crimes; Mr. Beam discussed the possibility of a felony murder conviction; Mr. Beam did not tell defendant that a plea was his only option; and at the plea hearing the court asked defendant "Are you satisfied with your lawyer's legal services?" Defendant replied, " Yes." Therefore, we conclude that defendant, at all relevant times, was represented by competent counsel.

5. Misunderstanding of the Consequences of a Guilty Plea, Hasty Entry, Confusion, and Coercion

Again, the record shows that defendant clearly understood the consequences of his plea, did not act hastily, and was not confused as he had previously rejected two plea offers prior to accepting the plea agreement which he originally told his attorney. he would take. Though defendant asserts coercion by his attorney, we find no evidence in support of this contention in the record as defendant had previously rejected two other plea offers and his attorney stated he was prepared to proceed to trial. We therefore conclude that a "[m]isunderstanding of the consequences of a guilty plea, hasty entry, confusion, and coercion" were not relevant factors to this case. *Robinson* at 229, 628 S.E.2d at 255 (numbers omitted).

## III. Conclusion

In sum, we conclude that defendant has not shown fair and just reason for withdrawal of his guilty plea. Defendant did not assert legal innocence as the reason for his request to withdraw his guilty plea. The State's proffer of evidence against defendant for the crimes to which he pled guilty was strong. The length of time between defendant's entry of his guilty plea and his request to withdraw it was lengthy. Defendant, at all relevant times, was represented by competent counsel, and "[m]isunderstanding of the consequences of a guilty plea, hasty entry, confusion, and coercion[,] *see id.* (numbers omitted), were not relevant to defendant's entry of his guilty plea. As defendant has failed to show a "fair and just reason" for withdrawal of his guilty plea, *see id.*, we need not address whether the State would be prejudiced by defendant's withdrawal. *See Meyer* at 743, 412 S.E.2d at 343. We affirm the trial court's denial of defendant's motion to withdraw his guilty plea.

AFFIRMED.

Judges McGEE and McCULLOUGH concur.