STATE OF NORTH CAROLINA
v.
GUILLERMO PINEDA-BENTACOURT
No. COA08-1528
Court of Appeals of North Carolina
Filed September 1, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General G. Mark Teague, for the State.
Duncan B. McCormick, for defendant-appellant.
ELMORE, Judge.
Guillermo Pineda-Bentacourt ("defendant") appeals from the denial of his motion to withdraw his guilty plea as well as judgments entered for trafficking in cocaine by possession, trafficking in methamphetamine by possession, and conspiracy to traffic in cocaine by possession. For the following reasons, we affirm.
Pursuant to a plea agreement entered on 17 January 2007, defendant stipulated to the following summary of the facts as presented by the State: On 25 February 2005, the Wake County Sheriff's Department was investigating a murder case. The investigation led them to an address where defendant and his nephew lived. As some of the officers were preparing a search warrant to be issued for the residence, defendant and his nephew Antonio Pineda started to leave the residence in a cab. Officers stopped the cab. Upon searching the residence, large quantities of cocaine and methamphetamine were found. When confronted with the discovery of the drugs, defendant stated that he knew the drugs were there, and that they were brought to the residence by a man named Arsenio Sanchez. Mr. Sanchez had been charged with the murder the police were investigating. Defendant told police that Mr. Sanchez would pay him to keep drugs at that residence. The cocaine weighed 1,990.7 grams, and the methamphetamine weighed 850.4 grams. Defendant stipulated to the factual basis for the plea.
On 28 February 2005, Stephanie Jenkins was appointed by the court to represent defendant. On 5 April 2005, defendant was indicted for trafficking in cocaine by possession of 400 grams or more, trafficking in methamphetamine by possession of 400 grams or more, and conspiracy to traffic in cocaine by possession of 400 grams or more. On 19 December 2005, defendant filed a motion to suppress statements made to law enforcement on the day he was arrested. Defendant is from Mexico, his native language is Spanish, and he does not speak much English. He alleged constitutional violations in that the statements he gave to police were illegally obtained, and that the police who interviewed defendant did not speak fluent Spanish. The motion to suppress was never heard. Instead, on 17 January 2006, defendant pleaded guilty to the crimes charged.
At the plea hearing, the trial court conducted the plea colloquy with defendant through an interpreter. Pursuant to the plea, defendant agreed to plead guilty to the offenses as charged, and judgment was continued until 17 April 2006, or until such time as the State prayed for judgment. The delay was to allow defendant an opportunity to render substantial assistance to the State in the murder case.
On or about 7 March 2007, defendant's nephew entered a guilty plea stemming from the 25 February 2005 arrest. The nephew pleaded guilty to lesser charges and received a shorter sentence than defendant. On 12 May 2007, defendant directed a fellow inmate to write a letter in English addressed to his attorney Ms. Jenkins, the North Carolina State Bar, Senior Resident Superior Court Judge Donald Stephens, and a local television news station. The letter stated that defendant had been abandoned by his counsel, that he had not seen her in eight months and had not been to court in over a year. Defendant denied having any knowledge regarding co-defendants in the matter, demanded that the "frivolous charges" be dismissed, and stated that he had "no direct link whatsoever to these crimes."
The matter came on for hearing on 17 May 2007, with the State prepared to proceed with sentencing. Defendant's attorney Stephanie Jenkins raised the issue of defendant's letter with the court, and after some discussion, the trial court allowed defendant's motion to remove his attorney and Ms. Jenkins' motion to withdraw as counsel. The court directed that a new attorney be appointed. Ms. Jenkins noted for the record that the delay in sentencing was due to the fact that judgment was continued in order to allow defendant to render substantial assistance to the State in two other cases. However, one of the cases was resolved by a guilty plea to murder in the fall of 2006; the other case was resolved in the spring of 2007 when the co-defendant, defendant's nephew, pleaded guilty to lesser drug charges stemming from the 25 February 2005 search of their house. Ms. Jenkins also noted that defendant had not provided substantial assistance to the State in those cases. Although defendant's nephew went to trial on the drug offenses, defendant refused to testify, the trial ended in a mis-trial, and the State accepted a plea of guilty to lesser charges from the nephew.
Deborrah L. Newton was appointed to represent defendant. On 5 July 2007, defendant, by and through his new attorney, filed a motion to withdraw the plea on the basis of stated actual innocence. A brief preliminary hearing was held on the motion on 23 August 2007, at which the trial court determined that the hearing should be rescheduled to allow defendant an opportunity to file an affidavit containing more specific bases in support of withdrawal of the plea. Defendant thereafter filed an unverified affidavit on 4 October 2007. In the affidavit, defendant asserted that he never voluntarily confessed to the charges, he was placed in fear of the police by his attorney, and he was coerced into signing the plea. Defendant further stated:
As for the factual basis for the plea: I did not know the owner of the drugs. Artemio Sanchez lived at Tommans Trail too. Antonio Bautista lived there for three months; he is my nephew. No drugs were found in my room, and I was not aware of the fact that Sanchez put drugs in the house. It is not true that Artemio paid me. That is an error between law enforcement interpreting my statements. I never told law enforcement I was paid to hold drugs. I never told law enforcement Sanchez used the house to store drugs. I did not possess the drugs. No Spanish speaking officer was present during my interview. I was never told I had a right to leave, or have an attorney present.
He noted that he had never gotten a ruling on his motion to suppress, and he requested a hearing for the motion to withdraw his guilty plea, as well as on the motion to suppress.
A hearing was held on the motion to withdraw the guilty plea on 1 February 2008 and 15 February 2008. Defendant testified that he was pressured into signing the plea of guilty, he did not understand the plea, the plea was in English and he could not read any English at the time it was signed. He stated that his attorney told him that the police were really mean, and that a trial would not be a good idea. He said that made him afraid of the police. In Mexico, police take people, beat them, and make them talk. He stated that he did not believe he would go to jail, that he only told the judge he was guilty at the plea hearing because he was under pressure from his attorney and he did not know what he was doing. His attorney told him that if he gave information relating to a murder investigation, it would help him. He admitted that he did not provide any information about a homicide.
On cross-examination, defendant admitted that he had never been arrested in Mexico or gone to court there, although he stated he had been beaten by police in that country. He acknowledged that he had an interpreter at the plea hearing, and that he heard the factual basis for the plea. Defendant agreed that since being taken into custody on 25 February 2005, he had not been beaten, threatened, or harmed by any police officer. He admitted that he had an interpreter at all times while meeting with his attorney, and that his attorney went over the transcript of plea with him prior to the plea hearing. His attorney explained to him that judgment would not be entered immediately, that he would have an opportunity to render assistance to the State, which might get his sentence reduced. Defendant was aware that in the spring of 2007, his nephew pleaded guilty to drug offenses that were less severe than his own. When prompted, he admitted he wanted to withdraw his guilty plea because he wanted a better deal than the one he got.
Stephanie Jenkins testified that she met with defendant at least a dozen times, and she always met him with an interpreter. She stated she explained the indictments to defendant and what the maximum penalties were for each charge. She told him that as a statutory matter he would be required to serve a certain sentence if found guilty. She also explained what substantial assistance meant, that if defendant was able to assist the State in a murder case, it might help his sentence. She reviewed the transcript of plea with defendant, spending at least two hours going over it with him, and he said that he understood the plea. The State made no promises to defendant as part of the plea agreement, and defendant understood that he would not be sentenced right away, in order to render substantial assistance to the State. Defendant pleaded guilty to all the charges. After the plea, defendant had at least one meeting with law enforcement regarding the other case, and defendant cooperated. Ms. Jenkins told defendant that the State was not going to object to a finding of substantial assistance. She advised him that she would try to seek one consolidated term, and ask the judge to go below the maximum, but she could not promise what the judge might do. However, defendant wrote the letter in May 2007, resulting in Ms. Jenkins' removal from the case.
Detective Scott Broadwell also testified, and recounted the night defendant was arrested. He testified that he speaks competent Spanish, although not with the same level of expertise as the interpreter. He started studying Spanish when he was 13, continuing through college, and he participated in a study abroad program in Mexico where he spoke Spanish every day. On 25 February 2005, he assisted in interpreting defendant's statement at the police station. Detective Broadwell informed defendant that he was there voluntarily, and he did not read any rights to defendant.
The hearing was continued to 4 April 2008, at which time the trial court denied defendant's motion to withdraw his guilty plea. The parties then discussed sentencing. Defense counsel asked for consolidation of the charges for one judgment with concurrent sentences. She also requested the trial court deviate from the mandatory trafficking sentence since defendant rendered substantial assistance to the State. The State countered that it was unclear what reduction was agreed to, because Ms. Jenkins was removed from the case before that issue was discussed in court. Also, defendant did not testify in the case against his co-defendant, whose trial ended in a mis-trial, leading to a plea on lesser charges. The trial court found that defendant had not rendered substantial assistance, and sentenced defendant to the following terms of imprisonment: 175 to 219 months on the trafficking in cocaine by possession charge, 225 to 279 months on the trafficking in methamphetamine by possession charge, and 175 to 219 months on the conspiracy to traffic cocaine by possession. From the order denying his motion to withdraw his guilty plea, and the subsequent judgments and commitments entered, defendant appeals.
Defendant argues the trial court erred by denying his motion to withdraw his guilty plea because he has presented a fair and just reason for withdrawing the plea. Defendant contends that he asserted his innocence, he did not understand the nature and consequences of his plea, his nephew's plea to reduced charges from the same set of facts favors withdrawal of defendant's guilty plea, the plea agreement was not the result of lengthy and protracted negotiations, and the time period between the entry of the plea and the motion to withdraw the plea is not determinative. Defendant also contends the trial court's findings of fact and conclusions in the order denying the motion were not supported by the evidence. We are not persuaded by defendant's arguments.
A decision to deny a defendant's motion to withdraw a guilty plea is not reviewed under the abuse of discretion standard, but upon an independent review of the record. State v. Handy, 326 N.C. 532, 539, 391 S.E.2d 159, 163 (1990). Although a defendant does not have an absolute right to withdraw a guilty plea, a motion to withdraw a guilty plea before sentencing will be granted liberally if the defendant presents a "fair and just reason" to withdraw. Id.
Factors which favor granting the motion include: (1) whether the defendant has asserted his innocence; (2) the strength of the State's evidence; (3) the length of time between the guilty plea and the motion to withdraw it; and (4) whether the defendant has had competent legal representation. Id. at 539, 391 S.E.2d at 163. Misunderstanding the consequences of a guilty plea, hasty entry, confusion, and coercion are also factors to be considered. Id. Once a defendant makes a proper showing, the State may refute the defendant's motion by showing evidence of prejudice to the State if the motion is granted. Id.
Here, defendant failed to file his motion to withdraw his guilty plea until a year and a half after his guilty plea was entered. This Court has previously placed great emphasis on the length of time that elapses between a guilty plea and a motion to withdraw the plea. State v. Robinson, 177 N.C. App. 225, 229, 628 S.E.2d 252, 255 (2006). A year and a half is an extraordinary amount of time to elapse before seeking to withdraw a guilty plea, and requires a strong showing by defendant that he is entitled to withdraw his guilty plea. See State v. Marshburn, 109 N.C. App. 105, 108-09, 425 S.E.2d 715, 718 (1993) (an eight month delay required a defendant to show "considerably more force" than if he requested a withdrawal within one day or so of the plea being entered).
Defendant gives no plausible explanation for why he waited so long to challenge his guilty plea. On review, the timing of defendant's challenge to his representation and to the guilty plea itself raises questionable motives on defendant's part. His nephew entered a guilty plea to lesser charges than defendant on 7 March 2007, and received a lighter sentence than defendant was facing. Defendant first began expressing dissatisfaction with his case two months later, in May 2007. The murder case in which defendant was to have rendered assistance to the State was resolved in late 2006, without defendant giving any helpful information or testimony. It appears defendant refused to testify in his nephew's case, resulting in a mis-trial and the subsequent plea to lesser offenses. At the hearing on the motion to withdraw the guilty plea, defendant admitted that he wanted a better deal from the State than what he received. The lengthy delay and sequence of events relating to defendant's motion to withdraw his guilty plea raise extremely high barriers for defendant to overcome. In analyzing the remaining factors, we do not find defendant has shown a fair and just reason to withdraw his guilty plea so as to overcome these high barriers.
With regard to defendant's contention that he has asserted his innocence, the record does not reflect that defendant boldly and credibly maintained his innocence. In his 12 May 2007 letter complaining about his attorney's representation, defendant asked for the "frivolous charges" to be dismissed, and stated that he had "no direct link whatsoever to these crimes." Defendant did not unequivocally state he was innocent at that time and appears to be mostly concerned with his counsel's performance. The motion to withdraw the guilty plea, filed by defendant's new attorney, states that defendant advised his new counsel that he was innocent and he only signed the guilty plea out of fear. In the accompanying affidavit, defendant states that "I never voluntarily confessed to these charges," "I never voluntarily pled guilty," and "I was not involved." With regard to the factual basis for the plea, defendant stated he did not know that Arsenio Sanchez put drugs in the house, that he did not tell law enforcement he was paid to hold drugs, nor did he tell law enforcement that Sanchez used the house to store drugs. He stated he did not possess any drugs. At the hearing on the motion to withdraw the guilty plea, the bulk of defendant's testimony focuses on his misunderstanding of the plea and his assertion that he was coerced into signing it, not that he was not actually innocent of the charges. Although defendant stated that he was innocent, he admitted that he sought to withdraw the guilty plea because he wanted a better deal after his nephew pleaded to lesser charges. In light of all the circumstances surrounding this case, we do not find defendant's assertion of innocence to be so credible as to overcome the lengthy delay in seeking to withdraw the guilty plea.
Regarding the strength of the State's case against defendant, defendant admitted to detectives, including Detective Broadwell who speaks Spanish, that he knew the drugs were in the house, and he was holding the drugs for another person in exchange for money. Defendant claimed at the hearing to withdraw his plea that there was a misunderstanding regarding the payment of money, and that he meant he paid Mr. Sanchez rent for leasing the house. We do not find defendant's explanation regarding his confession convincing enough to determine that this factor weighs in favor of allowing defendant to withdraw the plea.
At all times in these proceedings defendant has received competent representation, and he was assisted by an interpreter when meeting with his attorney and when appearing in court. See State v. Villatoro, __ N.C. App. __, 666 S.E.2d 838 (2008) (no lack of communication or misunderstanding of proceedings where an interpreter was present to assist). Further, despite defendant's assertions to the contrary, it does not appear defendant's plea was the result of haste, coercion, or confusion. His attorney testified that she spent at least two hours going over the plea with defendant, and he indicated he understood. She also explained to him the maximum possible punishments for the offenses charged. She affirmed that she did not coerce or pressure him in any way. Defendant had an interpreter and answered the trial judge's questions responsively at the plea hearing, and indicated that he understood the nature and consequences of his plea. After reviewing the record and transcripts, we do not find defendant presented a fair and just reason for withdrawing his guilty plea a year and a half after it was entered. Defendant's assignments of error are overruled.
Affirmed.
Chief Judge MARTIN and Judge BRYANT concur.
Report per Rule 30(e).