An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1099

Filed: 19 May 2015

Wake County, Nos. 11 CRS 7982, 213829-30

STATE OF NORTH CAROLINA

v.

DEON MONTREL SYKES

Appeal by defendant from judgment entered 10 January 2013 by Judge G. Wayne Abernathy in Wake County Superior Court. Heard in the Court of Appeals 3 March 2015.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Katherine A. Murphy, for the State.*

> *James W. Carter for defendant-appellant.*

DIETZ, Judge.

Defendant Deon Montrel Sykes appeals from the trial court's denial of his motion to withdraw his guilty plea. Sykes was convicted of robbing a man at gunpoint. The victim gave a description of his assailant and the getaway vehicle to police. Police pursued and ultimately used road spikes to stop the fleeing car, recovering the victim's wallet and a firearm that had been thrown from the vehicle. Sykes was the only occupant of the vehicle matching the description of the

perpetrator, and the other occupants were prepared to testify at trial that Sykes robbed the victim at gunpoint.

Sykes pleaded guilty at a hearing and stated under oath that he was in fact guilty, that he admitted his guilt of his own free will, and that no one promised him anything in return for his guilty plea. Six months later, at the start of his sentencing hearing, Sykes moved to withdraw his guilty plea on the grounds that he was innocent, his counsel was not competent, and he was coerced into pleading guilty by the promise that the charges later would be dismissed.

We reject Sykes's arguments. Other than the bare assertions in his appellate brief and his own self-serving testimony, Sykes points to no record evidence or testimony supporting his claims. In light of the six-month delay between his guilty plea and his attempt to withdraw it, we hold that Sykes has not met his burden to establish fair and just reasons for withdrawal of his plea. Accordingly, we affirm the trial court's judgment.

## Facts and Procedural History

On 25 July 2011, the grand jury indicted Defendant Deon Montrel Sykes for robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, possession of a stolen firearm, and possession of a firearm by a convicted felon.

On 17 July 2012, Sykes appeared in court to enter a plea of guilty pursuant to a plea agreement with the State. During the hearing, Sykes was placed under oath and the court went through a detailed plea colloquy. The State informed the court of Sykes's record level and points under the structured sentencing statutes, and Sykes stipulated that the State's determination was correct. After the trial court explained the charges and potential punishments in detail, Sykes stated under oath that he understood all of the charges against him and the nature of the potential punishments. He also stated that he was entering the plea of his own free will, that no one promised him anything in return for his plea, and that he was in fact guilty of the charges.

The State then provided a factual basis for the plea which showed the following: On 17 June 2011, around 1:45 a.m., the victim, Antonio Demond Hopkins, approached Officer S.N. Rogers at the VIP Club in Raleigh and informed her that he was just robbed of his wallet and gold chain while in the parking lot. Hopkins told Officer Rogers that he was approached by three black males, one holding a gun. Hopkins described the man with the gun as having shoulder-length dreadlocks. Hopkins provided a description of the car he saw the men get into, and another Raleigh police officer quickly picked up pursuit of the vehicle.

The pursuit ended in Fuquay-Varina after officers deployed stop sticks onto the road. Sykes was inside the vehicle with two other black males and a female

driver. Sykes was the only one in the vehicle with shoulder-length dreadlocks. Officers recovered the victim's wallet and a .45 caliber gun which were discarded out of the windows of the vehicle during the pursuit. Hopkins later identified Sykes in a photographic lineup as the person who held the gun during the robbery, physically took his gold chain, and was the key participant in the robbery.

Under the plea agreement, the court would continue Sykes's sentencing to a later date in order for him to provide information to the State about an unrelated investigation. The trial court found that there was a factual basis for the plea, that Sykes was satisfied with his attorney, and that his plea was voluntary. The court accepted Sykes's plea in line with the plea agreement and continued his sentencing to a future date to allow Sykes to provide information to the State.

Six months later, on 10 January 2013, Sykes returned to court for sentencing. At the hearing, Sykes moved to withdraw his guilty plea, stating that he only pleaded guilty because his attorney informed him that he would get fourteen years in prison if he went to trial and that he was prejudiced because he did not have faith in his counsel's ability to handle the case. When questioned further about his understanding of his plea agreement, Sykes stated that "[t]he agreement was if I cooperated then this matter would be looked upon about my case getting dismissed." The court immediately placed him under oath and asked for more information about the purported agreement to dismiss the charges. Sykes stated under oath that

"somebody" told him that if he cooperated with the State, his case would be dismissed, but he did not identify the person who purportedly told him that.

The trial court stated that "frankly, the Court finds as a fact that the Court does not believe a single word this man says. Not one word. I think he is lying under oath." The court consolidated all the charges into the robbery with a dangerous weapon charge and sentenced Sykes to 51-71 months imprisonment, a sentence at the bottom of the mitigating range. Sykes appealed.

**Analysis**

**I.     Appellate Jurisdiction**

After Sykes's sentencing hearing, he went back into court and entered oral notice of appeal. However, there is no record of his notice of appeal in the transcript. Additionally, due to a clerical error, Sykes's file was misplaced and appellate entries were not issued until 26 February 2014, outside the fourteen-day window to properly notice a criminal appeal. N.C. R. App. P. 4 (a)(2) (2013).

Sykes admits these defects in perfecting his appeal and asks this Court to review the merits of his appeal by allowing his petition for a writ of certiorari. Because Sykes's untimely appeal is due to circumstances beyond his control, we exercise our discretion to allow his petition for a writ of certiorari. *See* N.C. R. App. P. 21(a)(1); *State v. McCoy*, 171 N.C. App. 636, 638, 615 S.E.2d 319, 320 (2005) ("While this Court cannot hear defendant's direct appeal [for failure to perfect his

notice of appeal], it does have the discretion to consider the matter by granting a petition for writ of certiorari.").

## II.    Denial of Motion to Withdraw Guilty Plea

Sykes argues that the trial court erred by denying his motion to withdraw his guilty plea because he established "fair and just reasons" for the motion. We disagree.

"In reviewing a trial court's denial of a defendant's motion to withdraw a guilty plea made before sentencing, the appellate court does not apply an abuse of discretion standard, but instead makes an independent review of the record." *State v. Villatoro*, 193 N.C. App. 65, 67-68, 666 S.E.2d 838, 841 (2008). A court generally should allow a presentence motion to withdraw a guilty plea if the defendant makes "a sufficient showing of a fair and just reason." *State v. Handy*, 326 N.C. 532, 542, 391 S.E.2d 159, 164-65 (1990). "The defendant has the burden of showing his motion to withdraw his guilty plea is supported by some fair and just reason." *State v. Robinson*, 177 N.C. App. 225, 229, 628 S.E.2d 252, 254-55 (2006) (internal quotation marks omitted). Once the defendant meets his burden of showing a fair a just reason to allow his motion to withdraw his guilty plea, "the State may refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea." *State v. Chery*, 203 N.C. App. 310, 312, 691 S.E.2d 40, 43 (2010) (internal quotation marks omitted).

Our Supreme Court has identified a list of factors courts should consider in addressing a defendant's motion to withdraw a plea:

> [1] whether the defendant has asserted legal innocence, [2] the strength of the State's proffer of evidence, [3] the length of time between entry of the guilty plea and the desire to change it . . . [4] whether the accused has had competent counsel at all relevant times[,] [5] [m]isunderstanding of the consequences of a guilty plea, [6] hasty entry, [7] confusion, and [8] coercion.

*Handy*, 326 N.C. at 539, 391 S.E.2d at 163 (citation omitted). No one factor is determinative. *See id.* However, "[t]his Court has placed heavy reliance on the length of time between a defendant's entry of the guilty plea and motion to withdraw the plea." *Robinson*, 177 N.C. App. at 229, 628 S.E.2d at 255. When the defendant waits a significant amount of time before moving to withdraw his guilty plea, "the reasons given to support withdrawal must have considerably more force." *Handy*, 326 N.C. at 539, 391 S.E.2d at 163 (internal quotation marks omitted).

Here, Sykes waited six months after entering his guilty plea before making a motion to withdraw his plea. Sykes argues that he made his motion to withdraw his guilty plea at the start of the sentencing hearing, and although it was six months after entry of his plea, "[t]here is no showing [Sykes] had any control in determining when this case would be returned to court." However, this Court previously has upheld a trial court's denial of a defendant's motion to withdraw his guilty plea when the defendant waited more than one month before moving to withdraw his plea. *See*

*State v. Graham*, 122 N.C. App. 635, 637-38, 471 S.E.2d 100, 101-02 (1996); *see also*

*State v. Marshburn*, 109 N.C. App. 105, 108-09, 425 S.E.2d 715, 718 (1993).  If Sykes

changed his mind about the plea, he could have contacted his attorney at any point

during this six-month period and filed a motion to withdraw the plea.  He offers no

evidence to show why he did not do so and why he waited until the sentencing hearing

six months later.

In light of the six months between the time Sykes entered his guilty plea and

when he first moved to withdraw his plea, Sykes's reasons for seeking to withdraw

his guilty plea "must have considerably more force" than in an ordinary case.  *Handy*,

326 N.C. at 539, 391 S.E.2d at 163 (internal quotation marks omitted).

Sykes argues that he demonstrated fair and just reasons to allow his motion

to withdraw his guilty plea because he claimed he was innocent, did not have

competent counsel at all times, and was confused and coerced into accepting the plea.

We address and reject each of these arguments in turn.

## A. Assertion of Legal Innocence

Sykes first contends the he should have been permitted to withdraw his plea

because he asserted his innocence.

At the start of the hearing, Sykes told the court that he only pleaded guilty

because his attorney told him he would get fourteen years in prison if he did not.  He

also stated that "somebody" told him if he pleaded guilty and cooperated by providing

the State with information on another crime then his case would be dismissed. Later in the hearing, Sykes stated, "Your Honor, for one I didn't commit no robbery." This was the first instance that Sykes claimed he was not guilty, and he did not provide any explanation for *why* he was innocent despite the overwhelming evidence of guilt. The trial court stated that it "[did] not believe a single word [Sykes] says."

At his plea hearing, Sykes admitted under oath that he was "in fact, guilty of the charges." He also did not object to the factual basis of his plea presented by the State. The State showed that the victim identified Sykes as the person who robbed him at gunpoint. Officers apprehended Sykes fleeing the scene in a vehicle and recovered the victim's wallet, which was thrown from the vehicle as it fled from police. Sykes's two co-defendants were willing to testify against Sykes regarding his participation in the robbery.

In light of this evidence, and after reviewing the entire record, Sykes failed to show that this factor weighs in his favor.

## B. Lack of Competent Counsel

Sykes next contends that he did not have competent counsel in the time leading up to his guilty plea.

At the plea hearing, Sykes stated, "I don't have faith in this lawyer carrying my case. I feel like my life is in jeopardy here and I don't have the confidence to proceed about this matter on behalf of her carrying this case out for me." But there

is no evidence in the record that the performance of Sykes's counsel was in any way deficient. Indeed, during the transcript of his plea agreement, Sykes testified that his attorney explained the nature of the charges against him and the range of possible punishments he may face by pleading guilty. He then stated that he was satisfied with his legal counsel.

Sykes argues that he only pleaded guilty "because his attorney told him he was a level IV and could get fourteen years" and that he "had no other option" because "it's either take this plea or you will have that 14 years at the end of this week." The trial court questioned his attorney, who disputed Skyes's statement and explained that she "probably said he could get up to 14 years if he was found guilty of everything and it was box carred [sic] which he could get more than that." Sykes's counsel also obtained a favorable plea agreement for him where the court sentenced him at the very bottom of the mitigating range.

As the trial court observed, Sykes could have received a substantially harsher punishment than the sentence he received, which was at the low-end of the mitigated range after consolidation of the charges. Even if we were to accept Skyes's self-serving testimony as true—and we are not persuaded that it is—Sykes has not shown that he lacked competent counsel during the proceedings below. Accordingly, this factor does not favor Sykes.

## C. Confusion and Coercion

Finally, Sykes contends that he was confused and coerced into accepting the guilty plea. Sykes argues that he was confused about his prior record level because at the hearing on 17 July 2012, he was told he was a level IV, but at his sentencing hearing he was a level III. Sykes further argues that "he could easily consider the overstatement of his prior record level as a means to coerce him into taking a plea he did not want to accept."

But importantly, Sykes only argues that he *could* have been coerced in this way, not that he actually was. Additionally, at his plea hearing, Sykes stipulated to his prior record level being a level IV, and there is no evidence in the record indicating that this level was incorrect.

Sykes also argues that he did not understand his possible punishments and only pleaded guilty because he was told he would get fourteen years imprisonment. But as explained above, his counsel testified that she did not tell Sykes that his sentence would be fourteen years in prison, but that "he could get up to 14 years if he was found guilty of everything." The trial court found Sykes's counsel to be credible, and nothing in the record supports the opposite conclusion.

Sykes further argues that he was confused when accepting his plea because he believed the charges against him would later be dismissed if he cooperated with law enforcement in a separate investigation. But during the plea colloquy, Sykes stated

under oath that he understood that he did not have to plead guilty, that he understood the terms of his plea agreement, and that no one "promised [him] anything or threatened [him] in any way to cause [him] to enter the plea against [his] will." The court informed Sykes that his sentencing would be continued to give him the opportunity to provide information to the State that may lead to a more favorable sentence, but the record does not contain any indication that anyone promised Sykes the charges would be dismissed if he cooperated. Thus, this factor also does not weigh in Sykes's favor.

In sum, we hold that Sykes failed to satisfy the heightened burden for withdrawal of his guilty plea in light of the six-month delay before seeking to withdraw his plea. Accordingly, the trial court did not err in denying his motion.

## Conclusion

Sykes failed to meet his burden to show a fair and just reason for withdrawal of his guilty plea in light of the six-month delay between his guilty plea and his request to withdraw it. Accordingly, we affirm the trial court's judgment.

AFFIRMED.

Judges CALABRIA and McCULLOUGH concur.

Report per Rule 30(e).