STATE OF NORTH CAROLINA v. CHARLES EDWARD DEAL

No. 891SC782

(Filed 17 July 1990)

**Criminal Law § 146 (NCI4th)— armed robbery—withdrawal of guilty plea—not allowed—error**

A sentence of fourteen years imprisonment based on a guilty plea to armed robbery was vacated and remanded in light of defendant's low intellectual abilities, sufficient credible evidence that he was laboring under a misunderstanding of the guilty plea process, and the State's lack of argument that its case against defendant would be prejudiced as a result of his being allowed to withdraw his plea. Although defendant

did not attempt to revoke his plea for over four months, this appears to be the result of erroneous expectations and lack of communication with his attorney.

**Am Jur 2d, Criminal Law §§ 501, 502, 505.**

APPEAL by defendant from judgment entered 12 October 1988 by *Judge Henry L. Stevens, III*, in DARE County Superior Court. Heard in the Court of Appeals 7 May 1990.

On 8 February 1988, defendant was indicted for robbery with a dangerous weapon. On 28 April 1988, he entered a plea of guilty to that offense before Judge I. Beverly Lake, Jr. Judge Lake accepted the defendant's plea. The court continued prayer for judgment and ordered a pre-sentence evaluation. On 11 August 1988, Judge Paul M. Wright entered an order allowing defendant's attorney, Charles D. Coppage of Manteo, to withdraw from the case. On 5 October 1988, defendant, through his new counsel, filed a motion to withdraw his plea of guilty to robbery with a dangerous weapon. On 11 October 1988, Judge Henry L. Stevens, III, denied defendant's motion and sentenced him to an active term of fourteen years' imprisonment. Defendant appeals the trial court's denial of his motion to withdraw his plea of guilty on the grounds that it was not the result of defendant's informed choice.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Robert E. Cansler, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender M. Patricia DeVine, for defendant-appellant.*

JOHNSON, Judge.

On the evening of 5 December 1987, the employees of Hardee's of Kill Devil Hills had closed the restaurant and were going home. The night manager, Ms. Judy Keith, was carrying the bank deposit bag containing $586.61 in her purse. Roderick Whitfield, a co-defendant, who was also a Hardee's employee, approached Ms. Keith and told her to drop the money. He had a knife, and Ms. Keith did as instructed. There was a second man with a knife who thrust it about to keep bystanders at bay. The two men fled on foot.

Investigators had reason to believe that defendant was involved. He was apprehended in the State of Florida. Defendant

gave four different statements to authorities. He implicated five other people and indicated that the purpose of the robbery was to obtain money to buy cocaine.

In his motion to withdraw his guilty plea, defendant alleged, *inter alia*, that he had been advised by his former attorney, Charles Coppage, that in return for his guilty plea to the armed robbery charge and testimony against the other co-defendants, he would be allowed to withdraw his plea and plead guilty to the lesser offense of common law robbery. He also alleged that all the co-defendants had been permitted to plead guilty to common law robbery.

Defendant was nineteen years old at the time of his guilty plea. A diagnostic report prepared by the State Division of Prisons indicated that defendant dropped out of school in the eighth grade, that he had previously been diagnosed as learning disabled, and that he reads and spells at a second grade level.

At the hearing conducted on defendant's motion to withdraw, defendant testified that he had been advised by Attorney Coppage that "we were going to plead guilty and testify against everybody else after I got tested up at the Polk Youth Center, and then we were going to change the plea and try and get a plea bargain." Defendant testified that this conversation took place in the holding cell, and there were no witnesses to it.

Attorney Coppage, a witness for the State, testified that he had been appointed to represent defendant. He stated that defendant had wanted to plead guilty by reason of insanity because of his drug use, but that he had advised him that if he testified against the other co-defendants and had a pre-sentence diagnostic test introduced to the court, his sentence might be minimized. He also stated:

> My recollection, the only thing I ever told him is he was charged with Robbery with a Dangerous Weapon, or Armed Robbery, that the sentence for that carried a maximum of 40 years to life. That there was a mandatory minimum sentence of 14 years of which he had to serve seven years, no probation, no parole, no good time, that he was going to do 7 years, day for day. But that I felt that if he cooperated with the state, given the fact he had waived extradition to come up here, had made a voluntary statement relatively early in the

STATE v. DEAL

[99 N.C. App. 456 (1990)]

criminal proceedings to a law enforcement officer, come into court and pleaded guilty to the criminal offense, had offered to give evidence against co-defendants, which he was not called upon to do, or in fact did give evidence against them, and with his family background, and so forth, I felt like I had a reasonably good chance of minimizing the active sentence which he was to receive for the offense.

He admitted telling defendant that he "could ask" the State if he could later withdraw his plea, but that he thought "the chances of it would never be better than slim to none." Coppage also stated that he was "highly perturbed" when he learned that other co-defendants had been allowed to plead guilty to common law robbery because he "did not feel Mr. Deal ha[d] the mental capacity to plan anything as extensive as this and that the real bad folks in this had been allowed to plead to a lesser offense while my client was having to take the full load." Coppage also stated that defendant "did not understand a lot of things," and that he would occasionally have to go over things several times. The attorney also confirmed that on the day defendant entered his plea, he answered "yes" to the question "Are you now under the influence of alcohol, drugs, narcotics, medicines, pills, or any other intoxicants?" Defendant was then taking a drug called Mellaril three times a day. The attorney could not remember what defendant had told him the drug was for, but stated it may have been "to stabilize his emotions or moods, or something like that."

At the guilty plea proceeding on 28 April 1988, Judge Lake concluded that defendant's plea was the result of an informed choice and freely and voluntarily made. At the hearing conducted on defendant's motion to withdraw, Judge Stevens held that "[r]egardless of the Defendant's low mentality, . . . there is no evidence of any kind that this Defendant did not make this plea as his voluntary and informed choice by which he made a choice which he was in his power to make." He also found that "[t]here is no reasonable foundation or basis for an opinion that there was an arrangement other than that which the Defendant advised Judge Lake and which he was cautioned about." Statements made at both these hearings are quoted below as necessary to the issues raised by defendant.

On appeal, defendant contends that the court erred in refusing to allow him to withdraw his guilty plea pursuant to G.S. §§ 15A-1022 and 1023 because the record shows that he was "motivated by

an ongoing and underlying misconception of the proceedings." Our Supreme Court recently addressed the question of withdrawal of guilty pleas in *State v. Handy*, 326 N.C. 532, 391 S.E.2d 159 (1990). The Court in *Handy* found the standards for granting permission to withdraw a guilty plea to differ depending on whether the request to withdraw was made before or after sentencing. "[A] presentence motion to withdraw a plea of guilty should be allowed for any fair and just reason." *Id.* at 593, 391 S.E.2d at 162. The Court set forth with approval the distinction recognized by most courts:

> In a case where the defendant seeks to withdraw his guilty plea before sentence, he is generally accorded that right if he can show any fair and just reason.

> On the other hand, where the guilty plea is sought to be withdrawn by the defendant after sentence, it should be granted only to avoid manifest injustice.

*Id.* at 536, 391 S.E.2d at 161, *quoting State v. Olish*, 164 W. Va. 712, 715, 266 S.E.2d 134, 136 (1980).

In *Handy*, the defendant pleaded guilty to first-degree murder, and the following morning, before proceedings reconvened, he moved to withdraw his plea. He told the court that he had felt "under pressure under the circumstances" to plead guilty, and that after praying about it overnight and talking with his mother and attorneys, he believed that he was not actually guilty of first-degree murder and wanted to withdraw the plea. He believed the only proper guilty plea was to second-degree murder. The trial court denied the defendant's motion to withdraw on the basis that the plea had been made freely, voluntarily and understandingly; that a factual basis for the plea existed; and that defendant's evidence to the contrary was unbelievable. The trial court also stated that it was exercising its discretion in denying the motion to the extent that it had discretion. The Supreme Court in *Handy* reversed the trial court and found that the reasons stated above by defendant were sufficient to support the standard of granting permission to withdraw for "any fair and just reason."

The *Handy* Court also described some factors which favor withdrawal as "whether the defendant has asserted legal innocence, the strength of the State's proffer of evidence, the length of time between entry of the guilty plea and the desire to change it, and

whether the accused has had competent counsel at all relevant times." *Id.* at 539, 391 S.E.2d at 163 (citation omitted). The Court went on to state that "[t]he State may refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea. Prejudice to the State is a germane factor against granting a motion to withdraw." *Id.* (citations omitted).

In the instant case we find sufficient evidence that defendant had a basic misunderstanding of what the result of his guilty plea would be, and that this misunderstanding constitutes a fair and just reason to permit him to withdraw his plea.

At the guilty plea proceeding, the following exchange took place:

THE COURT: All right. It appears to the Court that with respect to that portion of the transcript that the Defendant be allowed to offer testimony in other criminal trials in Dare County and will be given credit at sentencing for such testimony and offer of testimony. That the Defendant will be given a presentence evaluation. Mr. Deal, is that your understanding of the arrangement you have with the State at this time?

MR. DEAL: Yes, sir. *I thought you mean plea bargain with the D.A.*

THE COURT: Yes, sir.

MR. DEAL: *No.*

THE COURT: And do you fully approve of that arrangement?

MR. DEAL: Yes, sir.

At the hearing on defendant's motion to withdraw his guilty plea, he was questioned on direct regarding his prior plea:

Q: Did you enter a plea to Armed Robbery, or Robbery with a Dangerous Weapon on April 28, 1988?

A: Did I *enter a plea?*

Q: Yes.

A: *What do you mean?*

Q: Did you *plead guilty* in this court on April 28, 1988, of Robbery with a Dangerous Weapon?

A: Yes, sir.

Q: Was Attorney Charles Coppage your Attorney at that time?

A: Yes, sir.

Q: Can you tell the Court on what basis you entered that plea? Why did you enter that plea?

A: We were trying to . . .

Q: When you say we, who are you talking about?

A: Me and Charles Coppage. *We were trying to get the District Attorney to give us a plea bargain. The District Attorney put me on the stand against another client or with anybody having to do with that, then I could get a plea bargain for my testimony. Therefore, we would have to plead guilty at the time, and then after I testified against everybody we would change it back and go for a plea bargain.*

Q: And what were the terms of that plea bargain that you were going to be allowed to plead later?

A: It would be dropped down to Common Law Robbery.

Q: Is that the basis you entered the plea on on April 28, 1988?

A: Yes, sir.

On cross-examination, he persisted in his understanding of how things would work:

Q: Mr. Deal, you entered this plea pursuant to a written plea transcript, did you not, sir? You signed a plea transcript, did you not, that appears in the record in this case?

A: *In that I plead guilty,* yes.

Q: And the Judge asked you in open court, did he not, sir, if that was the plea arrangement that appeared on that transcript?

A: I was told by Charles Coppage that this was what we were going to have to do, so *we could go ahead and plead guilty* and sign this thing, and that is what I did.

Q: In open court, didn't the judge ask you, sir, if your signature appeared on that plea transcript?

A: Yes sir.

STATE v. DEAL

[99 N.C. App. 456 (1990)]

Q: And if you had read the plea transcript, and read the answers contained thereon?

A: Actually, sir, *I don't read that good and, I don't know.*

Q: He asked you if you and Mr. Coppage had gone over the plea transcript, is that not correct?

A: Yes sir.

Q: You swore that you were telling the truth when you told the Judge that was the plea that you were entering on that day, and you understood the terms of that plea?

A: Yes sir. But I was told to do so by my lawyer *so we could go about doing this and get the plea bargain.*

Q: But you did tell the court that was your plea arrangement, and those were the only terms of the plea arrangement that appeared on that document you signed, is that correct?

A: Yes sir, but that is not what I was led to believe by my lawyer.

Q: So you, but in open court you indicated that was your, that you wished to enter a plea of guilty at that time?

A: Being advised by Charles Coppage, yes.

Q: And you answered all of the questions posed to you by the Court that were involved in that plea arrangement, did you not, in that transcript of plea?

A: Yes, but I was advised on how to answer.

. . . .

Q: Now, who was a party to that agreement?

A: Charles Coppage.

Q: Was there anyone else that you had that agreement with?

A: No sir.

Q: Did anyone representing the State of North Carolina make any such agreement with you?

A: *Nobody else had talked to me, at the time I haven't [sic] been able to see Charles Coppage, and that is one the reasons we got him to resign.*

STATE v. DEAL

[99 N.C. App. 456 (1990)]

Q: Did I or any other person representing the State of North Carolina make any agreement with you that does not appear of record?

A: No sir, *I thought he would do that, I thought he had done that.*

Q: When was this conversation you had with Mr. Coppage concerning any arrangement that does not appear of record, when did that take place?

A: When we signed that.

Q: Was that here in open court, sir, or was that someplace else?

A: That was back in the holding cell. That was between me and him and nobody else was there.

(Emphases added.)

After independently reviewing the record (*see State v. Handy, supra*), we find that in light of defendant's low intellectual abilities, there is sufficient credible evidence that he was laboring under a basic misunderstanding of the guilty plea process. We therefore find that his plea of guilty was not the result of an informed choice. Although he did not attempt to revoke his plea for over four months, this appears to have resulted from his erroneous expectations and lack of communication with his attorney. The State has also not argued that its case against defendant would be prejudiced as a result of his being allowed to withdraw his plea. *See United States v. Savage*, 561 F.2d 554 (4th Cir. 1977). We conclude that defendant has met his burden of showing a fair and just reason for withdrawing his plea of guilty to robbery with a dangerous weapon. We therefore vacate the sentence based on that guilty plea and remand for proceedings based upon a new plea by defendant.

Sentence vacated; remanded.

Chief Judge HEDRICK and Judge EAGLES concur.