STATE OF NORTH CAROLINA v. VERNON WEBSTER HATLEY, Defendant

No. COA06-817

(Filed 7 August 2007)

**1. Criminal Law— withdrawal of guilty plea—greater than agreed to sentence**

The trial court did not err by giving defendant a sentence greater than that set in a plea agreement where the agreement explicitly stated that the district attorney was not bound to the less stringent sentence if defendant did not comply with the

---

terms. There was no ambiguity, defendant did not abide by the terms of his agreement, and N.C.G.S. § 15A-1024 thus did not apply.

**2. Criminal Law— withdrawal of plea agreement denied—failure to cooperate—terms of agreement**

The trial court did not err by denying defendant's motion to withdraw his guilty plea where defendant asserted that the State breached the plea agreement by not making a sentencing recommendation, and the State asserted that defendant breached the contract by not cooperating. A defendant who breaches a plea agreement is not entitled to go to trial if the agreement provides otherwise.

**3. Criminal Law— withdrawal of guilty plea—fair and just reason not shown**

The trial court did not err by denying defendant's motion to withdraw his guilty plea, made before sentencing, where defendant did not carry his burden of showing a fair and just reason for the withdrawal.

Appeal by defendant from judgment entered 3 February 2006 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 15 March 2007.

*Roy Cooper, Attorney General, by Joan M. Cunningham, Assistant Attorney General, for the State.*

*Barry Nakell for defendant.*

ELMORE, Judge.

Defendant Vernon Webster Hatley (defendant) became the Senior Director of Transportation for the Wake County Public School System (the school system) in 2001 and was responsible for both school bus operations and budgeting. During the 2003 and 2004 fiscal years, defendant participated in a

scheme to obtain money or property in excess of $100,000 in value from the Wake County school system by signing and allowing the submission of false invoices to the school system, for which no parts or products were purchased from Barnes Motor and Parts Company, Incorporated, at the time payment on the invoices was made by the school system.

Barnes Motor and Parts Company, Incorporated (Barnes) supplied inventory, including parts, office supplies, and furniture, to the school system. Defendant and other employees of the school system received gifts from Barnes, including laptops and gift cards exceeding $600,000.00 in value. Defendant also received new carpet in his home. In exchange for these and other gifts, defendant engaged in "pre-billing" with Barnes. "[T]he pre-bill meant that Wake County would advance funds to Barnes pursuant to invoices that [the school system] would generate." Later, the school system made purchases from Barnes to recover the amounts advanced. The purpose of the pre-billing scheme "was so Wake County could spend its entire budget before the end of the fiscal year without having to give back some of the budget money." Over the course of the year, Barnes delivered items to the school system and deducted the items from the "pre-bill," rather than charging for each item. School system accounting procedures at the time did not allow for advance payments; payments were made only upon receipt of the purchased items.

Barnes benefitted from this arrangement by providing motor parts and bus maintenance supplies to the school system from its inventory, as well as by purchasing the items from other vendors, often at full retail price. Barnes then sold those items to the school system with at least a thirty percent markup. As a result, the school system paid more for those supplies than it would have paid if the supplies had been ordered directly from the vendors.

The pre-billing scheme was not uncovered until 2004, despite a 2003 audit prompted by a cost overrun of $4,000,000.00 for supplies ordered by the Transportation Department of the Wake County Public Schools (the Department). In one instance, defendant and his assistant explained that safety seats installed in every school bus had cost about $1,200.00 per bus, and that other school bus readiness expenses had contributed to the cost overrun. The school system had 727 buses at the time, which would have cost $800,000.00 to equip with safety seats by defendant's calculation. An independent estimate of the cost to equip the school system's buses with safety seats was only $30,000.00.

Shortly before the 2004 audit, defendant asked Barnes to prepare a lease for the large screen television, previously purchased from Barnes, located in the school system's conference room. Defendant told Barnes that he thought a lease would look better to the auditors than a sale because the amount that the school system paid for the television exceeded $2,500.00, the amount defendant was authorized

to approve without an outside bid. Barnes prepared a lease for the television, and defendant signed it and backdated it to 15 May 2001.

A subsequent investigation by the State Bureau of Investigation (SBI) showed that during the 2003 fiscal year, defendant signed and submitted to the accounting department 1,451 invoices for payment to Barnes, totaling $2,612,003.00. During the 2004 fiscal year, defendant signed and submitted 1,084 invoices for payment to Barnes, for a total of $1,200,547.00. Each invoice was less than $2,500.00.

On 13 September 2005, as a result of the SBI investigation, defendant was indicted for one count of obtaining property in excess of $100,000.00 by false pretenses and one count of conspiracy to obtain property in excess of $100,000.00 by false pretenses. On 12 October 2005, defendant entered pleas of guilty to both counts. Defendant entered these pleas pursuant to a plea agreement with the State, whereby the State would recommend a sentence of fifty-eight months to seventy-nine months, which is at the low end of the presumptive sentencing range for these crimes. In exchange, defendant was required to cooperate truthfully with the ongoing investigation. The specific terms of the plea were articulated in a letter from the prosecutor to defendant's attorney:

> I am willing to recommend that your client receive an active sentence of not less than fifty-eight (58) months nor more than seventy-nine (79) months. Any other terms of the sentence would be at the discretion of the sentencing judge. This sentencing recommendation would be conditioned on the truthfulness of your client in the statements he has made to SBI S/A Gil Whitford and his continued complete cooperation and truthfulness. Should we find that your client has made, or does make, false material statements, or fails to cooperate, I would not be bound to recommend the above-described sentence.

Defendant entered his pleas at the same time as two Barnes employees. The trial judge continued the case until the State prayed judgment to allow defendant time to truthfully cooperate with the investigation. After defendant's guilty plea, the SBI interviewed him. Based on that interview, the prosecutor determined that defendant was not being truthful as required by the plea agreement, and defendant was therefore not entitled to the sentencing recommendation in the plea agreement. On 12 January 2006, defendant filed a motion to withdraw his guilty pleas, which the trial judge denied on 1 February 2006. Defendant received a sentence of 89 to 119 months.

I.

**[1]** Defendant first argues that the trial court erred by imposing a sentence greater than the sentence that had been set in the plea agreement, and also that the trial court erred by not giving defendant an opportunity to withdraw his guilty plea and proceed to trial.

Defendant cites N.C. Gen. Stat. § 15A-1024, which states:

If at the time of sentencing, the judge for any reason determines to impose a sentence other than provided for in a plea arrangement between the parties, the judge must inform the defendant of that fact and inform the defendant that he may withdraw his plea. Upon withdrawal, the defendant is entitled to a continuance until the next session of court.

N.C. Gen. Stat. § 15A-1024 (2005). In this case, the judge imposed a sentence greater than the one provided for in the plea agreement, and did not inform defendant that he could withdraw his plea.

However, the State avers that section 15A-1024 does not apply in this case because the trial judge found that defendant had failed to comply with the plea agreement, and thus no plea agreement was in place at the time of defendant's sentencing. This Court has held that "[a] plea agreement is treated as contractual in nature, and the parties are bound by its terms." *State v. Russell*, 153 N.C. App. 508, 509, 570 S.E.2d 245, 247 (2002) (citation omitted). In *Russell*, the defendant,

in accordance with a plea agreement, which provided a prayer for judgment would be entered until Defendant had the opportunity to testify against co-defendants in the case. The plea agreement further provided if Defendant complied with its terms, the State would agree to an active sentence of ten-twelve months to run concurrently with other sentences Defendant was already serving. If Defendant refused to testify against his co-defendants, "the State, at its option, [could] declare this agreement null and void or pray judgment on this plea."

*Id.* at 508-09, 570 S.E.2d at 246 (alteration in original). The defendant did not testify against his co-defendants, and the trial court subsequently sentenced him to an active sentence of ten to twelve months to run consecutively with the defendant's prior sentences. *Id.* at 509, 570 S.E.2d at 246. This Court affirmed the trial court's decision because "[t]here was no ambiguity in the plea agreement. It simply stated that if Defendant refused to testify against his co-defendants

the State had the option of declaring the plea 'null and void,' necessitating a trial, or praying for judgment." *Id.* at 510, 570 S.E.2d at 247.

In the plea agreement here, the agreement explicitly states that the district attorney is not bound to recommend the less stringent sentence if defendant does not comply with the agreement's terms. N.C. Gen. Stat. § 15A-1024 does not apply in this case because, as in *Russell*, there is no ambiguity in the terms of the plea agreement. Defendant did not abide by the terms of his plea agreement, and the agreement specifically allowed the district attorney to withdraw from his obligation.

## II.

[2] We turn now to defendant's second argument, that the trial court erred in denying defendant's motion to withdraw his guilty plea after the State did not make the sentencing recommendation anticipated by the plea agreement. Defendant argues that he should have been allowed to withdraw his guilty plea because the district attorney failed to comply with a material provision of the contract.

"In analyzing plea agreements, 'contract principles will be 'wholly dispositive' because 'neither side should be able . . . unilaterally to renege or seek modification simply because of uninduced mistake or change of mind.'" *State v. Lacey*, 175 N.C. App. 370, 372, 623 S.E.2d 351, 352-53 (2006) (quoting *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004)). Each side argues that the other party violated the contract first. The State asserts that defendant breached the contract by failing to cooperate and be truthful, and defendant asserts that the State breached the contract by making no sentencing recommendation.

Defendant supports his position by citing *Nags Head v. Tillett*, 314 N.C. 627, 632, 336 S.E.2d 394, 398 (1985) for the proposition that, "When one party to a plea agreement, as to a contract, fails to comply with a material provision, thereby defeating the very purpose of the contract, the other party is entitled to be restored to the position he occupied when the plea agreement was entered into." This reliance is wholly unfounded. *Tillett* has no relation to plea agreements, and any analogy between the contract of sale in *Tillett* and the plea agreement here is tenuous at best, especially in light of *Russell*, which clearly states that when a defendant violates his plea agreement, he is not entitled to "go to trial" if the agreement provides otherwise. *Russell*, 153 N.C. App. at 510, 570 S.E.2d at 247.

## III.

**[3]** Finally, defendant argues that the trial court erred in denying his motion to withdraw his guilty plea because he made his motion before sentencing, asserted his innocence, maintained that he had truthfully cooperated with the prosecution as required by the plea agreement, and showed a good, fair, and just reason for withdrawal of his plea.

There is no question that defendant made his motion to withdraw his guilty plea before sentencing. "Although there is no absolute right to withdraw a plea of guilty, a criminal defendant seeking to withdraw such a plea, prior to sentencing, is 'generally accorded that right if he can show any fair and just reason.' " *State v. Marshburn*, 109 N.C. App. 105, 107-08, 425 S.E.2d 715, 717 (1993) (quoting *State v. Handy*, 326 N.C. 532, 536, 391 S.E.2d 159, 161 (1990)). In reviewing the denial of a pre-sentence motion to withdraw a guilty plea, this Court conducts an independent review of the record. *Id.* at 108, 425 S.E.2d at 718.

> The defendant has the burden of showing that his motion to withdraw is supported by some "fair and just reason." Whether the reason is "fair and just" requires a consideration of a variety of factors. Factors which support a determination that the reason is "fair and just" include: the defendant's assertion of legal innocence; the weakness of the State's case; a short length of time between the entry of the guilty plea and the motion to withdraw; that the defendant did not have competent counsel at all times; that the defendant did not understand the consequences of the guilty plea; and that the plea was entered in haste, under coercion or at a time when the defendant was confused. If the defendant meets his burden, the court must then consider any substantial prejudice to the State caused by the withdrawal of the plea. Prejudice to the State is a germane factor against granting a motion to withdraw.

*Id.* at 108, 425 S.E.2d 715, 717-18 (1993) (citations and quotations omitted).

We examine now the factors that support defendant's contention that his motion to withdraw is supported by a "fair and just" reason.

First, although defendant asserted his legal innocence, the State argues that these assertions were "not credible and were wholly inconsistent with his behavior" because defendant: admitted to the

Superior Court that he lied under oath when he entered his plea; claimed to have been misled by television coverage of other corporate scandals despite having been fully informed of the legal theories of his case; testified that he changed his mind about being guilty after seeing the weakness of the State's evidence; and acknowledged under oath that he was guilty of these crimes. Defendant offers no factual or legal support for his assertion of legal innocence.

Second, defendant asserts that he filed his motion on the basis of a "significant change of circumstances in that the District Attorney had withdrawn from the plea arrangement." As discussed above, the district attorney was within his rights to withdraw from the plea agreement once defendant had breached it.

Third, defendant submits that he filed his motion promptly after the change of circumstances, although three months had elapsed. Defendant relies on two cases to support his position. The first, *State v. Loza-Rivera,* is unpublished. The second, *State v. Deal,* 99 N.C. App. 456, 393 S.E.2d 317 (1990), vacated a judgment resulting from a plea agreement made by a middle-school drop out who could read and write at the second grade level. *Id.* at 458, 393 S.E.2d at 318. This Court noted that the defendant in *Deal* waited four months to withdraw his plea, but explained that "this appears to have resulted from his erroneous expectations and lack of communication with his attorney." *Id.* at 464, 393 S.E.2d at 321. In this case, defendant is well-educated and appears to have had adequate communication with his attorney.

Fourth, defendant avers that "[t]he State had evidence against Defendant, but 'there was clearly a defense.'" The State, however, explains that "[e]ven defendant's appellate counsel had to concede that the State had 'substantial' evidence against defendant." This evidence includes testimony by three witnesses that they were privy to a phone conversation with defendant during which the "pre-bill" was discussed; signatures by defendant on almost 2,500 invoices, each under $2,500.00, in the few days near the close of the 2003 and 2004 fiscal years; and defendant's receipt of gifts from Barnes, along with knowledge that his colleagues had received similar, if not more substantial, gifts. This evidence strongly suggests that defendant had knowledge of and willingly participated in the criminal scheme.

Fifth, "Defendant believed that he had been truthful and cooperative with the prosecution, and that he had complied with his obligations under the plea agreement." Defendant's own brief, however,

states that "the evidence may have suggested that he should have been more aware or that the gifts may have made him more reluctant to challenge [Department Budget Officer Carol] Finch."

Finally, defendant asserts that the State suffered no prejudice, despite a finding by the trial court to the contrary. Under *Marshburn*, we only reach the question of substantial prejudice to the State if defendant has carried his burden of proof that a "fair and just" reason supports his motion to withdraw. 109 N.C. App. at 108, 425 S.E.2d at 718. We hold that defendant has not met this burden of proof and therefore do not reach the question of substantial prejudice.

Accordingly, we affirm the order of the trial judge.

Affirmed.

Chief Judge MARTIN and Judge McGEE concur.