An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-67

Filed 4 February 2026

Pasquotank County, Nos. 22CR333603-690, 22CR333606-690, 22CR333610-690

STATE OF NORTH CAROLINA

      v.

QUENTIN JACKSON, Defendant.

Appeal by defendant from judgment entered 19 August 2024 by Judge Marvin K. Blount III in Pasquotank County Superior Court. Heard in the Court of Appeals 23 September 2025.

> *Blau & Hynson, PLLC, by Warren D. Hynson, for defendant-appellant.*
>
> *Attorney General Jeff Jackson, by Assistant Attorney General Caden William Hayes, for the State.*

FLOOD, Judge.

Defendant Quentin Jackson appeals from the trial court's judgment entered upon his *Alford* plea to the following charges: one count of statutory rape of a child, two counts of statutory sex offense with a child, two counts of first degree sexual exploitation, and two counts of indecent liberties with a minor child. For the following

reasons, in our discretion, we deny Defendant's petition for writ of certiorari and dismiss his appeal.

## I. <u>Factual and Procedural Background</u>

A Pasquotank County grand jury returned indictments on 7 November 2022 charging Defendant with (1) one count of statutory rape of a child; (2) two counts of statutory sex offense with a child; (3) two counts of first degree sexual exploitation; and (4) two counts of indecent liberties with a minor child. On 5 December 2022, a Pasquotank County grand jury returned an indictment charging Defendant with one additional count of indecent liberties with a minor child.

On 15 July 2024, Defendant entered an *Alford* plea[1] for seven of the eight charges. The terms of the plea agreement were contained in the Transcript of the Plea signed by Defendant. Pursuant to the plea agreement, the State dismissed one count of indecent liberties with a minor child and consolidated the remainder of the charges into one B1 judgment with sentencing in the trial court's discretion.

During the plea colloquy, the State narrated a statement of facts as the factual basis for the plea pursuant to N.C.G.S. § 15A-1022(c). The State's factual basis recounts that, on 24 May 2022, Defendant picked up his girlfriend's fifteen-year-old

---

[1] An *Alford* plea allows a defendant to "voluntarily, knowingly, and understandingly" plead guilty while factually maintaining his innocence. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). An *Alford* plea carries all of the consequences of a guilty plea. *State v. Alston*, 139 N.C. App. 787, 792 (2000).

daughter, E.W.,[2] from her high school. At some point during the car ride to E.W.'s house, Defendant and E.W. discussed whether she would "be willing to pose for some photographs in her bikini with the idea that [Defendant] could . . . make money off these photographs." E.W. agreed. Once Defendant and E.W. arrived at her house, E.W. went in and grabbed a "couple of bathing suits." Defendant then drove E.W. to his place of employment in Pasquotank County, took several photographs of her in her bikini, and "[a]t some point . . . talked the young lady into removing her top and exposing her breasts."

On 1 June 2022, Defendant had E.W. come to his place of employment "under the same pretext." This time, however, "in addition to taking the photographs of the young lady in the bathing suit, he digitally penetrated her vagina. When he was doing that, he was filming it."

A couple of days later, on 3 June 2022, Defendant filmed E.W. in her bathing suit; and, during that time,

> performed oral sex or cunnilingus on the young lady and then asked her to lay over a futon where he would simulate a sexual act. When he was simulating a sexual act, she let him know that she could feel his penis inside of her vagina. He denied having access or entering her vagina, but she said I know what I know, and I can feel that you're inside of me. He continued for a period of time before he finally ejaculated on her back and buttocks while he photographed that as well. They later -- he and she attempted to clean up. She put her underwear and shorts back on, and then

---

[2] A pseudonym is used to protect the identity of the minor pursuant to N.C. R. App. P. 42.

she left.

On 4 June 2022, E.W. told her boyfriend about the things she had "been going through in order to see [him,]" including how "[D]efendant would offer to take them to hotels and things of that nature, which is part of the reason why she did this." The next day, E.W.'s boyfriend contacted her mother, who subsequently reported the incidents to the police.

A search warrant was executed at Defendant's place of employment where "a phone was recovered." A search of the phone revealed photographs of the 24 May 2022 incident, the 1 June 2022 incident, and the early parts of the 3 June 2022 incident; however, law enforcement never recovered the video of the oral sex and the vaginal intercourse. The underwear and pants that E.W. was wearing on 3 June 2024 were collected and sent to the crime lab in Raleigh. DNA that matches Defendant was found on those items.

After the State finished narrating the statement of facts at the plea colloquy, counsel for Defendant stated that he had no additions or corrections regarding the factual basis as read by the State and "reserve[d] remarks for the sentencing hearing." The trial court accepted Defendant's *Alford* plea, finding that "[D]efendant is satisfied with his lawyer's legal services, . . . is competent to stand trial, and the plea is the informed choice of . . . [D]efendant made freely, voluntarily, and understandingly." The matter was then continued for sentencing until 19 August 2024.

On 15 August 2024, a month after entering the plea deal, Defendant filed a *pro se* motion to withdraw his *Alford* plea. In his motion to withdraw, Defendant requested the trial court to withdraw his *Alford* plea because he had received, *inter alia*, new evidence that "strengthens his defenses[,]" "received ineffective assistance of counsel," and believed there was a *Brady* violation.

This matter came on for hearing on 19 August 2024. After hearing arguments from Defendant, defense counsel, and the State, the trial court denied Defendant's motion to withdraw his plea. Right after the trial court denied his motion, but before entry of judgment, Defendant asked if he could make an oral motion to appeal, which the trial court "[d]uly noted[.]" The trial court then proceeded to sentence Defendant to 276 to 392 months of imprisonment and ordered him to register as a sex offender for a period of 30 years. After judgment was entered, Defendant did not give any further notice of appeal; however, the trial court stated that his "[a]ppeal is duly noted[,]" and entered Appellate Entries.

## II. <u>Jurisdiction</u>

As an initial matter, we address this Court's jurisdiction over Defendant's appeal. On appeal, Defendant asks this Court to review the following issues: (1) whether there was an insufficient factual basis for the trial court to accept his *Alford* plea; (2) whether the trial court erred by denying Defendant's motion to withdraw his *Alford* plea; and (3) whether the trial court improperly coerced Defendant to enter his *Alford* plea by threatening to start trial with counsel with whom he was dissatisfied.

Defendant filed a petition for writ of certiorari ("PWC") contemporaneously with his brief, conceding that his right to appellate review is contingent upon this Court granting his PWC for two reasons: first, Defendant has no statutory right to raise the first and third issues on appeal, *see* N.C.G.S. § 15A-1444(a1) (2023), and second, Defendant violated Rule 4(a) of the Rules of Appellate Procedure by failing to properly give notice of appeal, *see State v. Jones*, 296 N.C. App. 512, 515 (2024) ("An oral notice of appeal given before entry of the final judgment violates Rule 4 and does not give this Court jurisdiction to hear the defendant's direct appeal."). In response to Defendant's PWC, the State filed a motion to dismiss, arguing this Court should dismiss Defendant's appeal for lack of jurisdiction.

A writ of certiorari is a "prerogative writ[]" that this Court may issue to aid our jurisdiction. N.C.G.S. § 7A-32 (2023). We may issue a writ of certiorari "in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C. R. App. P. 21(a) (2023). While the writ of certiorari is "an extraordinary remedial writ" that is intended to "correct errors of law[,]" *Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 572 (2023) (citation omitted), it "is not intended as a substitute for a notice of appeal because such a practice would render meaningless the rules governing the time and manner of noticing appeals[,]" *State v. Ricks*, 378 N.C. 737, 741 (2021) (citation and internal quotation marks omitted). Consequently, this Court issues a writ of certiorari "only if the petitioner can show merit or that error was

probably committed below" and "if there are extraordinary circumstances to justify it." *State v. Barton*, 295 N.C. App. 182, 186 (2024) (citation omitted). Ultimately, however, "[t]he decision . . . to issue a writ of certiorari is discretionary, and thus, [this Court] may choose to grant such a writ to review some issues that are meritorious but not others for which a defendant has failed to show good or sufficient cause." *State v. Ross*, 369 N.C. 393, 400 (2016).

We have previously granted a defendant's PWC where the defendant prematurely entered notice of appeal, but the trial court "noted the prior appeal and appointed the appellate defender to represent" the defendant. *See State v. Smith*, 292 N.C. App. 662, 665, *cert. denied, stay denied,* 899 S.E.2d 372 (N.C. 2024) (citation modified) (citing *State v. Lopez*, 264 N.C. App. 496, 503 (2019)). Furthermore, as Defendant notes, we have held "[a] defective notice of appeal 'should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake.'" *State v. Pierce*, 295 N.C. App. 556, 558 (2024), *review denied,* 912 S.E.2d 827 (N.C. 2025) (quoting *Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 410 (2011)); *see also State v. Springle*, 244 N.C. App. 760, 763 (2016).

Here, Defendant acknowledged his notice of appeal was premature but argues this Court should grant his PWC because "his intent to appeal was inferable and the State never claimed it was misled or prejudiced by the mistake[,]" and because his issues are "meritorious[.]" We agree with Defendant that his intent to appeal his

unsuccessful motion to withdraw his plea could be fairly inferred as the trial court duly noted his appeal before and after entry of judgment and entered appellate entries, and the appeal proceeded normally. *See Smith*, 292 N.C. App. at 665. As described below, however, we conclude Defendant has not shown merit or that error was probably committed below. Moreover, Defendant fails to show there are extraordinary circumstances that justify issuing a writ of certiorari. As such, in our discretion, we deny Defendant's PWC and dismiss his appeal.

## A. Sufficient Factual Basis

Defendant first argues the trial court erred in accepting Defendant's *Alford* plea because the State did not provide a sufficient factual basis. Specifically, Defendant asserts the State failed to provide a sufficient factual basis to support his plea to the two charges of first degree sexual exploitation because the State's statement of facts "failed to establish" Defendant "allegedly film[ed] or photograph[ed] such material for sale or pecuniary gain." We disagree.

Regardless of "whether a defendant pleas guilty or pleas guilty pursuant to *Alford*[,]" this Court performs "the same analysis[.]" *State v. Crawford*, 278 N.C. App. 104, 107 (2021). "[A] trial court's determination as to whether a sufficient factual basis exists to support a defendant's guilty plea is a conclusion of law reviewable de novo on appeal." *State v. Robinson*, 381 N.C. 207, 217 (2022).

Under N.C.G.S. § 15A-1022, a trial court may not accept a defendant's guilty plea without first determining whether there is a factual basis to support the

defendant's plea. *See* N.C.G.S. § 15A-1022(c) (2023). The trial court must make this judicial determination independently and prior to accepting a defendant's guilty plea. *State v. Agnew*, 361 N.C. 333, 333–34 (2007). In making this independent judicial determination, the trial court may base its determination on information including, as relevant here, but not limited to, "[a] statement of the facts by the prosecutor." *See* N.C.G.S. § 15A-1022(c) (listing a non-exhaustive list of methods the trial court may consider when determining whether there is a factual basis for a defendant's plea). Section 15A-1022(c) "clearly does not require the trial court to find evidence from each, any or all of the enumerated sources." *State v. Atkins*, 349 N.C. 62, 96 (1998). "Nonetheless, such information 'must appear in the record, so that an appellate court can determine whether the plea has been properly accepted.'" *Agnew*, 361 N.C. at 336 (quoting *State v. Sinclair,* 301 N.C. 193, 198 (1980)).

Defendant was charged with violating N.C.G.S. § 14-190.16(a), which reads, in relevant part:

> A person commits the offense of first degree sexual exploitation of a minor if, knowing the character or content of the material or performance, the person does any of the following:
>
> > (1) Uses, employs, induces, coerces, encourages, or facilitates a minor to engage in or assist others to engage in sexual activity for a live performance or for the purpose of producing material that contains a visual representation depicting this activity.
> >
> > (2) Permits a minor under his custody or control to engage in sexual activity for a live performance or

for the purpose of producing material that contains a visual representation depicting this activity.

(3) Transports or finances the transportation of a minor through or across this State with the intent that the minor engage in sexual activity for a live performance or for the purpose of producing material that contains a visual representation depicting this activity.

(4) Records, photographs, films, develops, or duplicates for sale or pecuniary gain material that contains a visual representation depicting a minor engaged in sexual activity.

N.C.G.S. § 14-190.16(a) (2023).

Here, the indictments returned against Defendant for the purpose of charging him with first degree sexual exploitation of a minor allege Defendant "unlawfully, willfully[,] and feloniously did film or photograph for sale and pecuniary gain material, video recordings, and pictures containing a visual representation depicting a minor . . . engaged in sexual activity . . . ." Accordingly, it is clear that the State intended to prosecute Defendant under N.C.G.S. § 14-190.16(a)(4). *See State v. Simpson*, 235 N.C. App. 398, 402 (2014) (holding the defendant was charged with violating N.C.G.S. § 14-208.18(a)(2) because, even though the indictment did not specify which subsection the defendant was charged with, the indictment described the essential elements of subsection (a)(2)).

Defendant concedes the State's factual summary satisfied some elements of N.C.G.S. § 14-190.16(a)(4) but argues the State's factual summary for 1 June 2022

and 3 June 2022 did not contain "any reference to or information about [Defendant] allegedly filming or photographing such material *for sale or pecuniary gain.*"

In reviewing the State's factual summary here, we find *State v. Alston*, 268 N.C. App. 208 (2019), to be instructive. In *Alston*, the defendant agreed to plead guilty to the charge of felony serious injury by vehicle in exchange for the State to drop the charges of driving while impaired and driving while his license was revoked. *Id.* at 208. Pursuant to N.C.G.S. § 15A-1022(c) (2018), the State presented a statement of facts as a factual basis for the defendant's guilty plea. *Id.* at 209. After the State finished narrating the statement of facts, counsel for the defendant stated that he had nothing to add and asked the trial court "to accept the plea[,]" which the trial court obliged. *Id.* at 210. On appeal, the defendant argued the trial court erred by accepting his plea because the prosecution's factual summary did not clearly state whether the defendant was under the influence while he was driving and whether the victim sustained serious injury. *Id.* This Court rejected the defendant's argument, reasoning that, although the prosecution did not provide evidence to these elements, the trial court could reasonably infer "from the prosecutor's description of drug components being found in [the d]efendant's blood that [the d]efendant was driving under the influence." *Id.* Further, the trial court could infer "the child sustained *serious* injury" from "the prosecutor's statement that the child victim had to be transferred to another hospital for care[.]" *Id.* As such, we held the State's factual basis was sufficient and affirmed the trial court's judgment. *Id.*

Similar to the factual summary in *Alston*, the State in the instant case presented a statement of facts that permitted the trial court to reasonably infer Defendant, on 1 June 2022 and 3 June 2022, filmed or photographed E.W. engaging in sexual activity for sale and pecuniary gain. Importantly, as recounted in the State's statement of facts, Defendant asked E.W. if she would be willing to pose for some photographs in her bikini "with the idea that . . . [Defendant] could make money off these photographs . . . and this would be a way to raise some money to help her mother out." While it is true the State indicated this conversation took place on 24 May 2022, the State also indicated that, on 1 June 2022 and 3 June 2022, Defendant persuaded E.W. to take more photos "under the same pretext." Thus, the court could reasonably infer that Defendant photographed or filmed E.W. on 1 June 2022 and 3 June 2022 for sale or pecuniary gain. *See id.* As such, the information provided by the State established a sufficient factual basis for Defendant's *Alford* plea, and Defendant's argument lacks merit.

**B. Defendant's Motion to Withdraw**

Defendant next argues the trial court erred by denying Defendant's motion to withdraw his *Alford* plea because fair and just reasons warranted granting his motion. We disagree.

"In reviewing the denial of a pre-sentence motion to withdraw a guilty plea, this Court conducts an independent review of the record." *State v. Hatley*, 185 N.C. App. 93, 99 (2007). Generally, "[t]he defendant has the burden of showing his motion

to withdraw his guilty plea is supported by some 'fair and just reason.'" *State v. Chery*, 203 N.C. App. 310, 312 (2010) (quoting *State v. Meyer*, 330 N.C. 738, 743 (1992)). In determining whether a reason is "fair and just," this Court considers the factors our Supreme Court enumerated in *State v. Handy*:

> the defendant's assertion of legal innocence; the weakness of the State's case; a short length of time between the entry of the guilty plea and the motion to withdraw; that the defendant did not have competent counsel at all times; that the defendant did not understand the consequences of the guilty plea; and that the plea was entered in haste, under coercion or at a time when the defendant was confused.

*State v. Marshburn*, 109 N.C. App. 105, 108 (1993) (citing *State v. Handy*, 326 N.C. 532, 539 (1990)). "In considering each *Handy* factor individually, a court is not required to expressly find that a particular factor benefits either the defendant or the State in assessing whether a defendant has shown any fair and just reason for the withdrawal of a guilty plea." *State v. Taylor*, 374 N.C. 710, 723 (2020).

If the defendant successfully shows that his motion to withdraw is supported by some fair and just reason, "the court must then consider any substantial prejudice to the State caused by the withdrawal of the plea." *Marshburn*, 109 N.C. App. at 108. We consider substantial prejudice to the State, however, only when the defendant "has carried his burden of proof that a 'fair and just' reason supports his motion to withdraw." *Hatley*, 185 N.C. App. at 101. "Prejudice to the State is a germane factor against granting a motion to withdraw." *Handy*, 326 N.C. at 539.

Here, Defendant argues that four of the *Handy* factors favor allowing him to

withdraw his *Alford* plea: (1) Defendant's assertion of legal innocence; (2) the strength of the State's case; (3) the timeliness of filing his motion to withdraw; and (4) Defendant did not have competent counsel at all times. We consider each of these factors, in turn.

### 1. *Defendant's Assertion of Legal Innocence*

Defendant argues the trial court erred by denying his motion to withdraw because he repeatedly asserted his innocence at his sentencing hearing on 19 August 2024. The State acknowledges Defendant's assertions of legal innocence but contends Defendant's claims of innocence were "bald assertion[s]" that solely derive from his allegation that "nobody here today can produce a video of [Defendant] having sexual intercourse with anybody's child."

A defendant "does not conclusively establish the factor of assertion of legal innocence for purposes of the *Handy* analysis" by seeking to withdraw an *Alford* plea. *See Chery*, 203 N.C. App. at 314–15 (rejecting the defendant's argument that his *Alford* plea, "in and of itself, equated to a conclusive assertion of innocence"). Rather, we review the Record to determine if the defendant "made [a] concrete assertion of innocence[.]" *State v. Graham*, 122 N.C. App. 635, 637 (1996); *see also State v. Watkins*, 195 N.C. App. 215, 225 (2009). Where a defendant has asserted his innocence, this Court may consider whether the defendant provided any "factual or legal support for his assertion of legal innocence." *Hatley*, 185 N.C. App. at 100.

In *Hatley*, the defendant pleaded guilty to one count of "obtaining property in

excess of $100,000.00 by false pretenses and one count of conspiracy to obtain property in excess of $100,000.00 by false pretenses." *Id.* at 96. A few months after pleading guilty, the defendant filed a motion to withdraw his guilty pleas, which the trial court denied. *Id.* On appeal, the defendant argued his motion to withdraw was supported by fair and just reasons because he asserted his legal innocence. *Id.* at 99. Indeed, this Court acknowledged the defendant's assertion of legal innocence, but we also noted how the defendant "testified that he changed his mind about being guilty after seeing the weakness of the State's evidence[,]" and failed to offer "factual or legal support for his assertion of legal innocence." *Id.* at 99–100. Although this Court did not explicitly find whether the defendant's assertion of legal innocence weighed in favor of withdrawal, we ultimately concluded the defendant did not carry his burden of showing that fair and just reasons supported his motion to withdraw. *Id.* at 101.

Here, Defendant did not assert his innocence when he filed his motion to withdraw, but he did assert his innocence four times at the 19 August 2024 hearing. The first time Defendant asserted his innocence, he stated, "*Handy* . . . requires that I unequivocally announce my innocence. I have, even with the *Alford* plea. Even in the *Alford* plea, if you look at it, I always maintain that I am innocent of the crimes. I'm here today to say that I'm innocent of the crimes." The second time Defendant asserted his innocence, he contended, "*Handy* . . . requires the un-equivalent (sic) assertion of innocence. And I'm here to say that today, Your Honor, that I'm asserting my innocence. I'm appreciative. I'm ready to have my day in court . . . . I just want a

fair trial." The third time Defendant asserted his innocence he argued:

> If [you] look at the evidence, Your Honor, the hotel room, two days that they're alleging, no nothing under the name of [Defendant]. Nothing. I want a day in court. I want my day in court, Your Honor, and I want to prove my innocence. I want to state my innocence. I want to show my innocence. And I am innocent. Thank you, Your Honor.

The fourth time Defendant asserted his innocence he stated, "[n]obody in this courthouse, nobody here today can produce a video of me having sexual intercourse with anybody's child. It didn't happen. It don't exist. I'm innocent, and I want to prove that."

Defendant's *Alford* plea, by itself, however, does not establish "a conclusive assertion of innocence." *See Chery*, 203 N.C. App. at 314. Moreover, while Defendant argued no one had a video of him "having sexual intercourse with anybody's child[,]" Defendant failed to provide any other factual evidence to support his assertion of innocence. *See Hatley*, 185 N.C. App. at 100. Defendant's claim of innocence appears to be based on his desire to have more time to obtain new counsel and prepare for trial rather than his belief that he was not guilty of the charge to which he entered an *Alford* plea. Nevertheless, even if Defendant did sufficiently assert his legal innocence, the remaining factors weigh in favor of the denial of Defendant's motion.

### 2. *Strength of the State's Case*

Defendant next argues that, despite the State's confidence in the strength of its case, he was "likewise confident in his ability to contest it," by pointing out holes

in the State's evidence.

"We must view the State's proffer based upon what was presented to the court at the plea hearing[.]" *Chery*, 203 N.C. App. at 315. As described above, the State's proffer of the factual basis presented a strong evidentiary case against Defendant. Moreover, had the matter proceeded to trial, the State was prepared to present a wealth of testimonial evidence, geographical location data, articles of the victim's clothing with DNA that matched Defendant, and photographs that were retrieved from Defendant's phone, one of which contained "Defendant's face when he is putting his fingers into [the victim's] vagina[.]" As such, Defendant has failed to show this factor weighs in his favor.

### 3. *Timeliness of the Motion*

Defendant acknowledges he did not move to withdraw his plea until multiple weeks after he entered it but argues this Court has previously reversed a trial court's order denying of a motion to withdraw a guilty plea even though the defendant waited several months before filing the motion to withdraw.

"This Court has placed heavy reliance on the length of time between a defendant's entry of the guilty plea and motion to withdraw the plea." *State v. Robinson*, 177 N.C. App. 225, 229 (2006). "A swift change of heart is itself strong indication that the plea was entered in haste and confusion[.]" *Handy*, 326 N.C. at 539 (citation omitted). Where "the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to

support withdrawal must have considerably more force." *Id.* (citation omitted).

Here, Defendant waited multiple weeks before filing his motion to withdraw and asserting that he received new evidence to strengthen his defense, received ineffective assistance of counsel, and believed there was a *Brady* violation. Defendant's delay in filing his motion to withdraw, however, coupled with these reasons, indicates his decision was based on obtaining more time to prepare for a trial, and not on a "swift change of heart." *See Chery*, 203 N.C. App. at 318 (holding the record did not indicate the defendant's choice to withdraw his *Alford* plea was based on a swift change of heart because, although the defendant sent a letter seeking to withdraw his *Alford* plea to the judge nine days after entering his plea, "[i]t was only after [his co-defendant] was found not guilty of all charges did [the] defendant decide that he wished to withdraw his plea"). Therefore, we conclude this factor weighs in favor of denying Defendant's motion to withdraw.

### 4. *Competency of Counsel*

Defendant contends that he did not have competent counsel leading up to entering his *Alford* plea. Specifically, Defendant asserts "that, prior to the entry of the plea, he and his attorney had not discussed potential defenses, he was not satisfied with his attorney's legal services, and the nature and elements of the charges had not really been explained to him." While the Record clearly indicates that Defendant and defense counsel disagreed on how to handle the case, we are not convinced Defendant lacked competent counsel at any stage of these proceedings.

At the hearing on 19 August 2024, Defendant listed several reasons as to why he was unsatisfied with his counsel's legal services. After Defendant accused his counsel of being incompetent, the trial court heard from trial counsel. Trial counsel then refuted Defendant's allegations and explained that he went to Elizabeth City on two separate occasions to look at evidence with Defendant and looked at evidence several times for several hours on different occasions; went through the best-case and worst-case scenarios as to every charge with Defendant; and filed a motion to change venue per Defendant's request. Moreover, at the guilty plea hearing, defense counsel told the trial court that he had "several motions" that he was "prepared to file, but once [Defendant] told [counsel] he was taking a plea, [counsel] did not file the motions[.]" As such, we conclude this factor does not weigh in favor of Defendant.

In sum, we conclude Defendant has failed to show there is a fair and just reason for the withdrawal of his plea. Since we conclude Defendant failed to show there were fair and just reasons to support withdraw of his plea, we need not consider whether the State would be substantially prejudiced. *See Hatley*, 185 N.C. App. at 101. Therefore, Defendant's argument that the trial court erred in denying Defendant's motion to withdraw his *Alford* plea lacks merit.

**C. Voluntariness of Defendant's Plea**

Defendant lastly argues that his *Alford* plea should be vacated because he entered his *Alford* plea involuntarily. Specifically, Defendant asserts the trial court excessively pressured Defendant to enter an *Alford* plea by threatening to reject the

plea arrangement and proceed to trial with defense counsel with whom Defendant was dissatisfied. We disagree.

Generally, "a decision to plead guilty must be made knowingly and voluntarily by the defendant after full appraisal of the consequences[,]" because the defendant is waiving constitutional rights. *State v. Harbison*, 315 N.C. 175, 180 (1985). "A plea decision must be made exclusively by the defendant[,]" *id.*, and any "guilty plea that is procured through threats or intimidation is constitutionally invalid[,]" *State v. Pait*, 81 N.C. App. 286, 289 (1986) (internal quotation omitted). Thus, "[n]o person representing the State or any of its political subdivisions may bring improper pressure upon a defendant to induce a plea of guilty or no contest." N.C.G.S. § 15A-1021(b) (2023). "In making a determination of whether a defendant's plea was voluntary, the appellate court should look at the entire proceeding and make its decision based on the totality of the circumstances." *State v. King*, 158 N.C. App. 60, 69 (2003).

"Very few cases in North Carolina hold that conduct of a trial judge rendered a defendant's plea involuntary." *Id.* In *State v. Benfield*, however, our Supreme Court reversed the trial court's order denying the defendant's plea of guilty where the trial judge had informed defense counsel that he "was of the opinion that the jury was going to convict the defendant, and, if so, he felt inclined to give him a long sentence[.]" 264 N.C. 75, 76 (1965). Defense counsel communicated the judge's opinion to the defendant, and the defendant—who knew that his co-defendant had

pleaded guilty and received a suspended sentence—changed his plea of not guilty to a plea of guilty. *Id.* at 77. In reversing the trial court's order, our Supreme Court reasoned the plea was not a voluntary plea where the evidence showed

> that the court interrupted the hearing . . . to express the opinion that the jury would convict [the] defendant, . . . [and] if convicted, [the] defendant could expect 'a long sentence,' necessarily leads [the Court] . . . to the conclusion that [the] defendant changed his plea from not guilty to guilty because of what the judge said.

*Id.* at 77. Ultimately, our Supreme Court concluded the defendant should have been awarded a new trial. *Id.*

Similarly, in *Pait*, this Court vacated and remanded the defendant's guilty plea where the record showed the trial judge's statements improperly influenced the defendant. 81 N.C. App. at 290. Upon review, this Court found evidence in the record indicating the trial judge "became visibly agitated and said in what appeared to be an angry voice that he was tired of 'frivolous pleas[,]'" continued to question the defendant, and instructed defense counsel to confer with the defendant and "return with an 'honest plea.'" *Id.* at 287–88. Despite counsel's advice that the defendant had a right to plead not guilty, the defendant changed his not guilty plea to a guilty plea because he "was anxious and feared that [the trial judge] would be hard on him if he did not change his plea[.]" *Id.* at 288. Although the trial court did not make explicit threats, it was clear to this Court that the trial judge's remarks had "the self-evident purpose and effect . . . to provoke a plea of guilty[.]" *Id.* at 290.

Here, Defendant contends his *Alford* plea was involuntary because of the following discussion, in relevant part:

> THE COURT: . . . . Now, for me to accept this plea and move forward, I need to be satisfied that you are prepared to accept this arrangement. It's a lot of time regardless what you're pleading to, and I don't know whether you're not happy with the amount of time that you're subjected to, or are you not happy with the whole process? I mean, I need to -- you know, the question is a straightforward question: Are you satisfied with your lawyer's legal services? And, I mean, you're shaking your head no, and I'm wanting to know if that's not happy with the outcome or -- I mean, you hired him, correct?
>
> THE DEFENDANT: Yes, sir.
>
> . . . .
>
> THE DEFENDANT: . . . . I've known [defense counsel] before he represented me. It's a lot of time, right, but it is what it is, and I understood that once I agreed to take the plea. I understood. But I seen my discovery three weeks ago. I did meet twice. One time, [an SBI agent] had computer trouble, and I tried to talk with [defense counsel] about -- because we went, district attorney's office in there writing down notes. I couldn't really speak to him freely about what I want[ed] to speak to him about. . . . . .
>
> THE COURT: All right. I'm going to -- I'm just going to cut you off because if you're just going to tell me --
>
> THE DEFENDANT: I understand.
>
> THE COURT: -- these things to let me know that you're not satisfied with your lawyer's legal services for the purpose of taking a plea, then we'll just -- I mean, we will stop right now, and State has advised that they're going to proceed on it.
>
> THE DEFENDANT: I'm fine with the plea, but I just don't

feel like that I should have to lie to say I'm satisfied when I'm not when . . . .

THE COURT: Okay. I mean, I've heard -- I'm not going to be satisfied to take the plea, okay? I mean, I understand that people got rights to change their mind, and I'm sure the night before, there's probably a lot of reality setting in, but we've got a jury here . . . .

. . . .

THE COURT: I don't know if games are being played or what, but, I mean, hey, I've been doing it for a while. I've been 15 years on the bench. I think I'm pretty fair, and I sense that -- let me say -- I'm not going to say it. We're just going to start. We're gonna start picking a jury. We are going to start picking a jury.

THE DEFENDANT: Let's do it.

[DEFENSE COUNSEL]: Your Honor, he said he's ready to go forward.

. . . .

[DEFENSE COUNSEL]: Your Honor, he says he wants to go forward with the plea. . . .

While the evidence in *Benfield* and in *Pait* showed that the "clear, unequivocal statements by the trial judge directly resulted in the defendants' guilty pleas and rendered them involuntary[,]" *King*, 158 N.C. App. at 69, the evidence in the instant case does not indicate the trial court told Defendant they would have to proceed to trial as a way of improperly pressuring him into entering a plea. Rather, the trial judge—after extensively inquiring as to why Defendant was dissatisfied with his lawyer's legal services and hearing Defendant's reasons—explained that, under these

circumstances, they would have to proceed to trial since he would not be satisfied with Defendant's plea. Yet, after the trial judge explained this to Defendant, Defendant told the trial judge that he was "fine with the plea[,]" and defense counsel told the trial court—twice—that Defendant wished to proceed with the plea. Moreover, after a pause in the proceedings and after the trial court restarted the plea colloquy, Defendant swore under oath that no one "promised [him] anything or threatened [him] in any way to cause [him] to enter this plea against [his] wishes[,]" and he entered "this plea of [his] own free will fully understanding what [he was] doing[.]" Lastly, a review of the entire proceeding reveals that Defendant had already decided to enter an *Alford* plea, and Defendant does not point to, and we do not discern, any point in which he changed his mind in entering his plea. As such, based on our review of the cold record before us, we conclude Defendant's *Alford* plea was made knowingly and voluntarily. Thus, Defendant's final argument lacks merit.

### III. Conclusion

Therefore, because Defendant has not shown merit or that error was probably committed below, we deny Defendant's PWC and dismiss his appeal. Since we dismiss Defendant's appeal, we deny the State's motion to dismiss.

DISMISSED.

Judge GORE concurs.

Judge FREEMAN concurs in result only.

Report per Rule 30(e).